HUGH CAMPBELL *vs.* PORTLAND SUGAR COMPANY and others.

*Negligence—who are liable therefor.    When plaintiff must elect whom to sue,
where several are liable.*

The plaintiff, a driver of a job wagon, was employed by a seaman to take a chest on board of a vessel lying at a wharf owned by the Portland Sugar Company, whose general agents were the firm of J. B. Brown & Sons, the other defendants.  Portions of the wharf, and among them the place where the plaintiff was injured, had been let by them to a mercantile house some months previously by a verbal arrangement, and were used by the tenants for the storing of merchandise, principally lumber and cooperage stock, and for the loading and unloading of vessels, many of which were dispatched from the wharf, and among them the brig to which the plaintiff was going with the chest.  The way from the business streets of the city down the wharf, as far as the sheds near the foot of it, was open and much frequented.  To reach vessels lying where the brig was, it was necessary, on account of piles of lumber, &c., to go through the shed, the doors of which, on the wharf side, had been removed, and on the water side were kept open during business hours, thus affording free passage for all who had business with the vessels lying there.  Mariners' chests were always carried through there to vessels lying at that part of the wharf.  The plaintiff, with the chest on his shoulder, after passing through the shed, when near the gangway of the brig, stepped into an old hole, worn through the covering of the wharf, which had been there a long time, and received severe injuries.  As between the merchants who hired this part of the wharf, and the defendants, it was specially agreed that the defendants should do all the needful repairs, and their wharfinger spent most of his time on the wharf, and occasionally made repairs on the parts thus let.  Upon this state of facts, it was *held*, that the plaintiff could not be regarded as a mere licensee; that all persons who were induced to go upon the wharf for the transaction of business, or the performance of work connected with the purposes for which the wharf was used and rented, might hold the owners responsible for negligence in the construction and maintenance of the wharf, as for the breach of a duty; that the liability of the owners would be the same with respect to one going on business to a vessel lying at a part of the wharf which was thus rented, as with respect to one going on those portions of it more immediately in the owners' possession, and under their control; that it made no difference, under the circumstances above stated, whether the passage through the shed was held out to the plaintiff by the owners or their tenants, inasmuch as the tenants were making no use of the property except what the varying exigencies of the business for which the property was hired might require; that so long

Campbell *v.* Portland Sugar Co.

as the owners leased the property for such purposes they were bound to strict care to make it safe and free from pitfalls and traps; that the corporation was responsible for the negligence of its agents, on the principle, *respondeat superior*; that the agents were responsible as for personal negligence; that the action cannot be maintained against the corporation which owned the wharf, and their agents jointly, though both are responsible in several suits; that a verdict having been rendered against both upon the refusal of the presiding judge to rule that the action could not be maintained against the owner and agents jointly, it is necessary before the exceptions can be overruled that the plaintiff should enter a discontinuance at *nisi prius* against the owners of the wharf or the agents; that in the present case, by reason of certain testimony admitted, he must discontinue against the owners; that when such discontinuance is entered the ground of that exception would be removed, and that a new trial would not be granted on that account; that the case reported does not disclose such evidence of a want of due and ordinary care on the part of the plaintiff, as will preclude him from recovering; nor can the court say under all the circumstances that the damages are excessive.

ON EXCEPTIONS to the ruling of the justice of the superior court.

There was also a motion for a new trial filed by the defendants, upon the ground that the verdict for the plaintiff was against law and the weight of evidence; also, because the damages, assessed by the jury, at $9,500, were excessive. The plaintiff's injuries were of a very severe and painful nature, and at the first trial of the cause the verdict was for $8,166.

The facts and the rulings at the trial are fully stated in the opinion.

*J. & E. M. Rand,* for the defendants.

The court will find from the evidence that the wharf where the accident happened was the property of the Portland Sugar Company, and that neither of the Messrs. Brown (sued as defendants) had any interest in it, or anything to do with it, except as general agents of the sugar company.

The court will also perceive, from the evidence, that the entire end, or southerly portion of the wharf, including the place of accident, was let October 1, 1867, to and thereafterward occupied by Phinney & Jackson, who had the exclusive use and occupation of

the buildings, and of all portions of the wharf adjoining them, from that time ; the owners of the wharf having no control of that portion of it, or of the buildings hired and occupied by Phinney & Jackson ; that the owners of the wharf never place vessels, or permit them to be placed, at that portion of the wharf hired by Phinney & Jackson, and that no vessels, except those of Phinney & Jackson, land or receive goods at that part of this wharf; that Phinney & Jackson used these buildings for the storage of cooperage and shooks and molasses, bringing their vessels there to receive and to discharge cargoes. In a word, that Phinney & Jackson had the sole and exclusive use, occupation and control of the whole end of the wharf, including the place of accident.

The Hattie S. Bishop was loaded at the upper part of the wharf, near Phinney & Jackson's cooper shops, and only dropped down to this part of the wharf, the extreme lower end, on her way to sea.

The passage ways outside of the building are always kept open and free from obstructions, for public use. The plaintiff could have gone to the vessel by the outside passage way, without going through the buildings ; in which case he would not have passed over the place of accident.

The sugar company were to keep in repair the parts of the wharf let to Phinney & Jackson.

People went through the buildings, to the wharf outside of them, at their own pleasure—because the doors were opened in business hours—without asking leave of any one.

We object that the action cannot be maintained against all of the defendants jointly. A principal and an agent cannot be sued jointly for a neglect, or nonfeasance. The Browns are mere agents. If any authority is needed, see *Parsons v. Winchell*, 5 Cush., 592.

The ruling and instruction of the court, that if the Browns were agents of the sugar company, and had the general management of the wharf, they were liable, was erroneous.

We apprehend that it is quite apparent that the portion of the wharf where accident occurred, was not kept for public use at the time of accident.

If a plaintiff, in such a case as this, is entitled to recover, it can only be by reason of some failure in duty towards him, on the part of the defendant, growing out of the relations between them. The plaintiff must have had right to pass there. This is the general principle laid down in all the books and adopted in the cases cited *infra*.

The defendant company were to keep the premises let to Phinney & Jackson in repair, but only for the business for which they were let; only for Phinney & Jackson, and persons employed by them in the legitimate business of the place; certainly not for persons who enter upon them, not only without any authority, or even permission from Phinney & Jackson, but without their knowledge, and upon business with which Phinney & Jackson had nothing to do.

In this case the plaintiff undertook to use for a passage way a building which was let as a warehouse only. The sugar company were bound to keep the premises in repair for warehouse purposes only, and to make them safe for all persons visiting them under Phinney & Jackson, with reference to that business. This is the extent of their liability and of their implied contract.

The plaintiff was carrying a chest to a vessel, stopping only for a few hours at the side of the wharf opposite the building—not loading at the warehouse—not placed there for any of the purposes for which the building was hired. He was not employed by Phinney & Jackson; they had nothing to do with him in any way.

The plaintiff had no right to pass through the building; at any rate, no such right to pass through it, for the purpose for which he did pass, as to impose any legal liability upon the defendant company.

To subject the owners to any legal liability to third persons using this building as a mere passage way, the owners must have held this passage through the building out to the public as a safe way, and proper way of going to vessels lying there. There is no evidence of their having done so; neither the sugar company, the owners, nor even Phinney & Jackson, the lessees. On the

contrary, a passage outside of the buildings, on each side thereof, was left open.

The most that can be said is, that Phinney & Jackson kept the doors of the buildings open while carrying on their own business there, and permitted persons to pass through without objection. But such mere permission will not subject the sugar company to any liability to third persons. One availing himself of a mere permission takes the chances of accidents. Had the plaintiff taken the outside passage upon the wharf, he would not have passed near the hole.

There was no privity of any kind between the plaintiff and the sugar company, or even between the plaintiff and Phinney & Jackson; he did not come to the wharf and building at the solicitation or inducement of either of them, or upon any business connected with the purpose for which the buildings were erected, or let, or hired. In the absence of any such privity, invitation or inducement, all the cases say that a plaintiff cannot recover.

The principles of law applicable to cases of this kind are fully discussed and settled in *Sweeny v. Railroad Co.*, 10 Allen, 368; *Elliot v. Pray et als.*, Id., 378; *Zoebisch v. Tarbell et al.*, Id., 385; *Wendell v. Baxter*, 12 Gray, 494; *Gautret v. Egerton*, L. R., 2 C. P., 371; *Collis v. Selden*, L. R., 3 C. P., 495; *Holmes v. Railway Co.*, L. R., 4 Exch., 255; *Carleton v. Franconia Iron & Steel Co.*, 99 Mass., 216; *Barrett v. Black*, 56 Maine, 504.

The instructions given to the jury not being in conformity with the principles enunciated in these cases, our exceptions thereto should be sustained.

*Howard & Cleaves*, for the plaintiff.

I.  The wharf was established for the use of the public, and the defendants were bound to keep it safe for the uses for which it was constructed. *Wendell v. Baxter*, 12 Gray, 494; *Carlton v. Franconia Iron and Steel Co.*, 99 Mass., 218; *Stratton v. Staples*, 59 Maine, 94; *Radway v. Briggs et als.*, 37 N. Y., 356; *Pittsburg v. Grier*, 22 Penn. St. R., 54; *Gibbs v. Trustees Liv-*

*erpool Dock*, 3 H. & N., 175; *White v. Phillips*, 15 C. B., 245; *Smith v. London & St. Katherine Dock Co.*, 3 C. P., 326; *Barnaby v. Lancaster Canal Co.*, 11 Ad. & El. 223.

II. The lease to Phinney & Jackson did not relieve the defendants of their obligations to the public.

The premises were leased for the purposes of a wharf, and the defendants received compensation for such use. They were bound to keep it in repair by agreement, and upon well settled principles of law. *Taylor v. the Mayor of N. Y.*, 4 E. D. Smith, 559; *Radway et als. v. Briggs et al.*, 37 N. Y., 356.

III. The plaintiff was rightfully upon the wharf, in the prosecution of his business, and in the exercise of due care, and the injury happened through the negligence of the defendants. *Sweeney v. Old Colony R. R. Co.*, 10 Allen, 374.

IV. The defendants were properly joined in this suit. *Wright v. Wilcox*, 19 Wend., 343; *Phelps v. Waite et al.*, 30 N. Y., 78. If it were otherwise, a discontinuance should be allowed as to the parties improperly joined, and judgment rendered upon the verdict against the remaining defendants. *Hewett v. Swift et als.*, 3 Allen, 425.

V. The instructions given do not materially differ from those of the presiding judge in *Wendell v. Baxter*, before cited, and are quite as favorable as the defendants were entitled to. Shearman & Redfield on Negligence, 637, § 585, note 2.

BARROWS, J. The plaintiff was the driver of a job wagon, and was employed by the mate of a brig to take the mate's chest aboard the vessel, then lying at Brown's wharf, loaded and nearly ready for sea. Going down to the wharf for this purpose soon after five o'clock, in the afternoon of November 7, 1867, while it was still sufficiently light out doors to see, but duskish enough to require a light in the cabin, after going through a shed near the foot of the wharf, when near the gangway plank with the chest upon his shoulder, he stepped into a hole which had been long before that time worn through the covering of the wharf, and fell, receiving very severe and painful injuries.

The Portland Sugar Company owned the wharf. The other defendants composing the firm of John B. Brown & Sons, were the general agents of the sugar company, and had the whole management of its business, and had charge of the wharf, collecting the rents for the sugar company through the wharfinger, who was employed by the company, bills for rent being made out in the name of J. B. Brown & Sons, and receipted by the wharfinger. At the time of the accident, the part of the wharf where it occurred was occupied by Messrs. Phinney & Jackson, merchants, who hired certain portions of the wharf some months previously, by a verbal arrangement with J. B. Brown, and loaded and dispatched vessels thence, among others, the brig to which the plaintiff was going when he received the injury. The undisputed testimony is, that it was part of the contract of hiring that Brown should keep the wharf in repair. As between the lessors and the lessees no part of that duty rested on the latter. The sugar company's wharfinger spent most of his time upon the wharf, and testifies that "when any repairs were needed on that portion of the wharf hired by Phinney & Jackson, they were generally made by Mr. Brown's carpenter, under my direction, unless there was a large amount to be made, and then Mr. Brown superintended it;" that he "did not know that Phinney & Jackson had any control of the repairs; that they did make repairs in several instances, but usually he sent a man when called upon," that he repaired the place where plaintiff was hurt immediately after it was shown to him; that the office of J. B. Brown & Sons was the office of the Portland Sugar Company; that repairs were usually made by carpenters paid by the month, by the sugar company.

Indeed, there seems to be no question, that in all that the Messrs. Brown did in relation to the wharf, they acted in their capacity as general agents and managers of the sugar company, who held the title, and received the rents and wharfage. A great many vessels loaded at the wharf that fall, and the way leading down upon it as far as the sheds at the foot of the wharf, was open to the public at all times. Phinney & Jackson, however, appear to

have had the right to the exclusive use and possession of those portions which they hired; or, in other words, those parts of the wharf were appropriated for their business. The shed through which the plaintiff passed to the brig, was occupied with their merchandise, and the doors on the eastern, or water, side of it were kept closed, except in business hours, during which all the doors were open, and all who had occasion to go to a vessel, lying at or near the end of the wharf, went through them freely. In fact, the only practicable passage way on board a vessel lying where this brig did, when the plaintiff went to take the mate's chest on board, seems to have been through the shed, the way the plaintiff went when this accident occurred. The way down the wharf, outside the shed, seems to have been so obstructed by piles of lumber and cooperage stock, that all who had occasion to go on board a vessel lying at the southerly end or easterly side of the wharf near the end, as matter of necessity went through the shed, when they had anything to carry. Phinney testifies that it was open to anybody who had business with the vessels lying there, and that seamen's chests were invariably taken through it.

Hereupon the defendants' counsel requested of the court the following instructions, which were either refused, or given with modifications, to be noticed hereafter, viz: That the action cannot be maintained against all the defendants jointly; that this action cannot be maintained; that, if that portion of the wharf where the accident happened, was leased to Phinney & Jackson, and they had the exclusive possession and control of it, then the defendants are not liable; that unless the defendants held out that portion of the wharf where the accident happened, for public use, they are not liable in this action; that unless a passage through the warehouse (meaning the shed above spoken of) through which the plaintiff passed was kept by the defendants for public use, the defendants are not liable; that if Phinney & Jackson had the exclusive possession and control of the warehouse through which the plaintiff passed, and of that portion of the wharf where the accident happened, and the defendants never in any manner

held out to the public the building and the eastern doorway as a public passage, the defendants are not liable; that if Phinney & Jackson permitted the plaintiff to pass to the vessel through the warehouse, such permission does not impose any duty or liability upon defendants, and defendants are not liable to plaintiff for any injury sustained by him, in thus passing to the vessel. The judge, among other matters not excepted to, instructed the jury in substance that, to make out a case, the plaintiff must not only show that he was in the exercise of ordinary care and that the defendants had been guilty of negligence, in consequence of which the injury was sustained, but he must also satisfy them that the wharf, and that portion of the wharf where he was injured was devoted to public purposes; that it was a public thoroughfare; a passage thrown open to the public, and to which the public were invited, and that inducements were held out to the public to use it as a place of public travel. To this he added: "If you are satisfied that the defendants established the wharf for the use of the public and invited the public to use it for reasonable compensation, then they were bound to keep the wharf safe for the uses for which it was made and rented at that place; and if the plaintiff being properly on the wharf, in the prosecution of his business, and in the exercise of reasonable care and diligence, sustained the injury alleged through a defect in the wharf, then, the other conditions being fulfilled, the plaintiff is entitled to recover." The requests for instructions previously recited, so far as they tended to relieve the defendants from liability upon the ground that the place where the accident happened was in the possession of Phinney & Jackson, the lessees of the sugar company, or that a holding out of the place where the accident happened, or the passage through the shed as places of public travel by their said lessees, would impose no duty and no liability for negligence upon the defendants, the judge declined to give—some of them apparently not because he questioned their correctness as abstract rules of law in a case to which they could properly be applied, but because upon the testimony produced they were inapplicable here. For he thereupon

instructed the jury that the mere permission of Phinney & Jackson to the plaintiff to pass through would not render the defendants liable,—there must be something more than permission, "there must be a holding out to the public this as a place of public travel." If there were such a holding out and inducement to the public, he ruled in substance that it made no difference whether it was done by the defendants directly, or by and through their lessees. And he held that the obligation of the defendants to keep the wharf in repair extended to all persons rightfully prosecuting business or work relating to the loading, unloading and dispatch of vessels at that portion of the wharf hired by Phinney & Jackson, as well as to the immediate employees of that firm.

The distinction which runs through the cases between the relations which the owners of real estate bear to those who have been induced to enter upon the property of such owners by an appropriation of it to business purposes and to uses from which such owners derive profit, and the relations which they bear to mere licensees who are suffered, but not invited directly or indirectly, to pass over it at their own will and risk—where there is nothing to raise an implication that the property is fit for the use to which it is put, and that one may use it with confidence that no negligence on the part of him who derives a profit or advantage from such use has made or left it unsafe, was carefully observed at the trial. That a proprietor does not and ought not to stand in the same position with respect to injuries received on his premises towards mere licensees,—like the plaintiffs in the cases of *Hounsell v. Smyth*, 97 E. C. L. R., 731, and *Gautret v. Egerton*, 2 C. P. L. R., 371,—as he does towards one who is there by invitation, express or implied, for the transaction of a business out of which the proprietor gets his gain or income, is very certain. That a proprietor who has leased his estate, and is not in the present possession of it, would not be responsible for injuries occasioned to third parties by any use which his tenant might see fit to make of it, foreign to the purpose for which it was let, may well be conceded. If any unwonted or unexpected use of the property which the tenant

makes, creates the nuisance, it might well be argued that for such act of the tenant the landlord could not be held responsible.

· But nothing in the instructions given, or in the refusals to instruct, will be found in conflict with the well settled doctrine of the law, or the most favorable view for the defendants which can be taken of it, so far as either of these points can be deemed involved in the case before us.

The remark in *Holmes v. N. E. Railway Co.*, 4 Exch., 255, is applicable. "The question of a mere license does not arise, for as soon as you introduce the element of business which has its exigencies and necessities, all idea of mere voluntariness vanishes."

The plaintiff was not a mere licensee. He went to the wharf in the prosecution of his own calling, it is true, but upon business directly connected with that for the transaction of which the wharf was built, and held out by the owners as well to the public as to those more immediately negotiating with themselves, as a safe and suitable place for the transaction of such business.

· To all who had occasion to transact such business there, whether with themselves directly, or with their tenants, or with those on board the vessels lawfully lying there by the permission of the proprietors or their tenants, the owners of the wharf owed a duty, their neglect of which has been productive of serious injury.

The act in which the plaintiff was engaged was a necessary and common incident of the business for which the wharf was constructed and let. It is not necessary that the defendants should have had a direct interest in the transaction itself.

In *Tobin v. P. S. & P. R. R. Co.*, 59 Maine, 183, the business of the plaintiff, a hackman, like that of the present plaintiff, was not with the defendants but with the customers of the defendants.

In *Stratton v. Staples*, 59 Maine, 94, the plaintiff at the time she received her injury was going to the apothecary shop occupied by the defendant's tenant.

In *Wendell v. Baxter*, 12 Gray, 494, that part of the wharf where the accident occurred was let to the N. & C. C. Steamboat

Co., and while it is true that the plaintiff in that case was employed by the lessees to carry the mails from the steamboat to the post office, the reasoning of the court extends the right and remedy to all having lawful business on board the boat, Metcalf, J., remarking as follows: "Access over the wharf to the boat and from the boat over the wharf, for the purpose of lading or unlading the boat, was the undoubted right of all persons who had occasion for such access." The same argument was adduced there as here that the defendants could only be bound to keep the wharf in repair in favor of those with whom they as owners contracted or dealt, and that they had no contract with the plaintiff. And the same accurate and careful judge remarks thereupon: "But the plaintiff's right of action accrues from the duty which the law imposed on the defendant, to keep their wharf safe so long as they should permit it to be open and used, and not from any contract between them and him."

In *Smith v. London & St. Katharine's Dock Co.*, 3 C. P. L. R., 326, the question was raised under circumstances even less favorable for the plaintiff than those in the case at bar. The plaintiff there was an optician, and had gone on board a vessel lying in defendants' dock, at the request of an officer of the vessel, to exhibit some nautical instruments, presumably with an eye to trading in his own wares. It was argued, in defence, that he was not on board on the ship's business, or any business in which the proprietors of the dock were interested; that the contract for supplying access to the ship was with third parties, and did not affect the plaintiff's rights; but the court held defendants liable, maintaining in full, the doctrine that all persons coming to the vessel upon any lawful business would have the same right to safe access and egress as the passengers and crew of the vessel itself; and the chief justice remarked that "it is not one person in ten who goes on board a ship in a dock for the purpose of transacting business in which the dock company are interested, in any other sense than that he goes upon the business of the vessel or of those on board," and that "the dock company were paid for the use of

the access to the ship, not necessarily by every person who goes there, but by the owners of the ships in behalf of all who use it."

This is not a question of privity of contract, but of obligation under which the owners of real estate lie to all who are induced by the use which such owners make of their property to enter upon it for the transaction of business. And we fail to find any case where the owner has been exonerated from the consequences of neglect to make and keep the access to a place of business reasonably safe, because the property may be in possession of his tenant.

Certainly there can be no ground for claiming such exemption, where, as here, by express stipulation between the lessors and lessees, the former were to make all necessary repairs. To suffer such an exemption, even in the absence of such evidence as this case affords, we think would be contrary to public policy and substantial justice, for it would not unfrequently operate to deprive the injured party of all remedy except against an irresponsible tenant through whom a negligent landlord would reap the profits, without bearing the responsibilities, of his proprietorship. Like all who are engaged in business which involves the personal safety of large numbers, proprietors of wharves should be held to the exercise of the strictest care. *Pittsburg v. Grier*, 22 Penn. State R., 54.

A wharf used for the loading and discharge of the cargoes of vessels, is in its very nature a passage way over which, in all directions, the exigencies of business may take those people who have business to transact in connection with the vessels and those on board of them. To suffer a man-trap like this hole into which the plaintiff stepped, to remain as this had done for months, until an accident had demonstrated the necessity of replacing the worn out covering, might well be deemed a want even of ordinary care. The opening a way through the shed, when other access to the vessel lying there was prevented by piles of lumber, was no such unusual use of the property by the tenant, as would in any manner affect the liability of the owner. Had the accident occurred in the shed itself, (which was not the case) it would still have been

Campbell v. Portland Sugar Co.

in a passage to which the plaintiff had been impliedly invited in the prosecution of the common business. The wharfinger of the sugar company spent most of his time upon the wharf. He must have been cognizant of the uses which Phinney & Jackson were making of the parts appropriated to their business; and such uses must have been contemplated by the lessors when they rented those parts.

The business to be done was the loading and unloading of vessels, including, necessarily, the transportation to and from them, not only of seamen's chests, but of all such articles as make up their multiform outfit for sea voyages. A covering to the wharf that would be secure in any and all parts of it for the varying exigencies of such business, was an imperative necessity, and the wharf proprietors, so long as they kept the wharf open, and occupied or rented it for such business, were bound as to all whom the proffered facilities should bring there, to use due care to furnish it.

Vessels frequently change their position at a wharf for their own convenience, or that of others, and all parts of the wharf where they are allowed to lie, which are not actually covered by closed structures, are liable to come in use as ways of access, and due care should be used by the owners for the security of those having business there accordingly.

Apparently the request that the jury should be instructed that this action could not be maintained, was based upon the positions taken by the defendants (which we have been considering) with regard to the effect of the occupation of that part of the wharf where the accident happened by Phinney & Jackson, and the holding out of the particular spot as a way of access to vessels. The instruction was rightly refused. The renting of the property by the defendants for the purposes for which it was rented and used, imposed a duty upon them as to all who were induced to come upon the wharf upon lawful business connected with the purposes and uses for which it was let. That the occupier, as well as the owner, the tenant as well as the landlord, who directly, or by implication, induces persons to enter upon and pass over his prem-

ises, might also be subject to the action of a person injured by reason of his neglect to use due precautions for their safety, cannot better the position of the defendants. So long as the owner will receive his rents for the use of his wharf for such business, he must see to it that no neglect brings mischief to those who are thereby induced to go there.

The corporation is answerable for its constructive negligence, or perhaps (to speak more exactly) on the principle of *respondeat superior*, and must be held, as Lord Kenyon remarked, 1 East, 108, "to make a compensation for the damage consequential from the employing of an unskilful or negligent servant."

The other defendants, who were the general agents of the corporation, and had the care of this wharf, and who, through their senior partner, had agreed with the lessees to make all needful repairs, are certainly in no better position than their principal.

It is the actual personal negligence of the agents which constitutes the constructive negligence of the corporation. The corporation acts through and by them, and they act for the corporation, and when their acts or neglects result in injury to third parties, they are equally responsible with their principals.

But it does not thence follow that they are jointly responsible. The question whether they may be so held is a somewhat nice one, but we think there are substantial reasons assigned in *Parsons v. Winchell*, 5 Cush., 592, why the principal and agent should not be charged jointly in such a case. It is not, properly speaking, their joint act or neglect which causes the injury.

The proper adjustment of the final responsibility as between themselves, cannot well be effected if one who has distinct grounds of action against them—against the agents for their own negligence—against the principals because the law makes them responsible for the negligence of their servants—is permitted to recover against both in one suit. The distinction between actions on the case arising from negligence, and actions of trespass, where the wrong is inflicted at the command of the superior, in this respect is well marked, and goes somewhat deeper than mere form.

Campbell *v.* Portland Sugar Co.

But if it were found that there was no other cause of complaint but this misjoinder, the objection might ordinarily be obviated, as it was in the case of *Hewett v. Swift et als.*, 3 Allen, 420, by entering a discontinuance as to the corporation before taking judgment against the agents, or *vice versa*, as the plaintiff should elect.

In the present case, however, it is thought by some members of the court, that the proof of certain declarations made by one of the firm of J. B. Brown & Sons, may have tended to enhance the damages, and that therefore the plaintiff should be required to discontinue against the corporation, which might otherwise be injuriously affected by evidence which was admissible only against the co-defendants. When this has been done at *nisi prius*, the substantial ground of objection and exception, so far as the other defendants are concerned, will have been removed.

The plaintiff's right to maintain his suit severally against the corporation which owned the wharf, and against their agents, is established, unless the verdict ought to be set aside as against the evidence, on one or other of the grounds relied on in argument by the defendants' counsel.

They insist that the plaintiff did not exercise due care—that he might and should have seen the hole into which he stepped. But it does not seem to us very decisive evidence of a want of ordinary care that, engaged in such a business, and loaded as he was, in the waning twilight of a November day, he failed to observe a hole no larger than this, in a place where he had a right to expect, and where, but for the dereliction of the defendants, he would have found secure footing.

Again they urge that the damages are excessive. It is difficult to measure excessive pain against money. Two juries have passed upon the question in this case with substantially the same result. We are not prepared to say, upon the evidence before us, that the estimate thus reached by different men acting impartially under oath, is so clearly unjust as to warrant us in setting aside the verdict, and sending the plaintiff to a third trial. When he shall have discontinued against the sugar company in the court below, he

will be entitled to judgment on the verdict against the remaining defendants. Upon the removal of that objection, the entry will be, *Motion and exceptions overruled.*

APPLETON, C. J., WALTON, DICKERSON, DANFORTH and VIRGIN, JJ., concurred.