STATE OF MAINE
YORK, ss.

SUPERIOR COURT
Civil Action
Docket No. CV-16-0229

TERI NAVARRO HAKANSON,

Plaintiff,

v.

ROYAL CREST CONDOMINIUM
ASSOCIATION,

and

FORESIDE REAL ESTATE
MANAGEMENT, INC.,

Defendants.

**ORDER ON MOTION FOR**
**SUMMARY JUDGMENT**

Defendant Foreside Real Estate Management, Inc. has moved for summary judgment based on its contention that it owed no legal duty to plaintiff. For the reasons set out below, the motion is denied.

## Summary Judgment Factual Record[1]

On November 3, 2013 Teri Navarro Hakanson slipped, fell, and fractured her foot on the steps leading into her residence, a condominium unit in the building owned by Royal Crest Condominium Association (the "Association") located at 2 Ryefield Drive, Old Orchard Beach, Maine (the "Premises"). (Pl.'s S.M.F. ¶ 1-3.) She alleges that she

[1] Several months after filing its reply brief, Foreside filed a motion for permission to submit a supplemental statement of material facts. Plaintiff filed a timely opposition. The facts set forth in the supplemental statement are based upon depositions of two Association board members, Christine Adams and Brad Woodward. These facts were known prior to the initial filing of Foreside's motion for summary judgment. The motion for permission to submit a supplemental statement of material facts is denied. Rule 56 does not contemplate such a filing. *See* M.R. Civ. P. 56. Similar requests in other cases have been denied. *O'Gara v. Horizon LLC*, NO. CV-15-250, 2016 Me. Super. LEXIS 134, n. 1. (July 26, 2016); *Barclays Capital Real Estate v. Hamilton*, NO. RE-08-038, 2008 Me. Super. LEXIS 162, n. 1 (May 23, 2008). Even if considered, there still would remain disputed material facts that would prevent summary judgment.

1

slipped on a ¼ inch layer of pine needles that had accumulated on the steps. (Pl.'s S.M.F. ¶ 2.) Such pine needle accumulations occurred in the fall of every year, usually for about a month. (Pl.'s S.M.F. ¶ 28.)

In September 2012 the Association entered into an agreement with Foreside Real Estate Management, Inc. ("Foreside") in which Foreside agreed to assume the management responsibilities of the Premises (the "Agreement"). (Pl.'s S.M.F. ¶ 5; Def.'s S.M.F. ¶ 5.) Foreside's President Jeff Martin drafted the Agreement. (Pl.'s S.M.F. ¶ 6.) Under the terms of the Agreement, Foreside was "to furnish its best skill and judgment . . . and to perform its administrative, financial, and management responsibilities in the best manner consistent with effective management techniques and in [a] manner consistent with the best interests of the Unit Owners' Association." (Pl.'s S.M.F. ¶ 8.) Although the Agreement expressly provided for a one-year term starting on November 1, 2012, Foreside continued to perform under the Agreement after the one-year period expired and throughout 2013, including the date when plaintiff fell. (Pl.'s S.M.F. ¶ 7; Def.'s S.M.F. ¶¶ 6, 8.)

Foreside was responsible under the Agreement for managing and collecting assessments and other charges, preparing and executing the Association's budget, paying the Association's bills, maintaining the Association's records, executing contracts on the Association's behalf, soliciting vendors, and hiring and firing personnel "required to maintain and operate the Association properly," among other administrative tasks. (Pl.'s S.M.F. ¶¶ 11-14.)

Foreside was also responsible for "caus[ing] the property to be maintained and repaired in accordance with state statutes and local ordinances, in a condition at all times acceptable to the Board, including but not limited to such work as cleaning . . . grounds care, and such other maintenance and repair work as may be necessary." (Pl.'s

2

S.M.F. ¶ 16.) Foreside agreed to pay "special attention . . . to preventative maintenance." (Pl.'s S.M.F. ¶ 17.) The Agreement also provided that Foreside was to facilitate "regular building/amenity/grounds inspections." (Pl.'s S.M.F. ¶ 18.) Additionally, the Association's 30(b)(6) deponent, Linda Morehouse, testified that Foreside was responsible for conducting maintenance on the Premises and that the Association retained no such responsibility. (Pl.'s S.M.F. ¶¶ 15, 19.) Morehouse also testified that the Premises was not "at all times" kept in a condition that was acceptable to the Board if needles were permitted to accumulate on the front steps. (Pl.'s S.M.F. ¶ 31.) She also expressed that this problem would be "of grave concern" to the Association's Board. (Pl.'s S.M.F. ¶ 32.)

In addition, Foreside was responsible for receiving and responding to owner complaints about hazards on the Premises. (Pl.'s S.M.F. ¶ 24.) To this end, Foreside's contact information was posted in the building's lobby. (Pl.'s S.M.F. ¶ 24.) As required by the Agreement, Foreside was active in the meetings of the Association's Board of Directors and participated in decisions concerning subcontractors, grounds maintenance, trash pick-up, cleaning, and finances. (Pl.'s S.M.F. ¶ 23.) In exchange for the services provided, the Association paid Foreside a per unit management fee. (Pl.'s S.M.F. ¶ 26.)

In March of 2013, Foreside executed a Grounds Maintenance contract with Seabreeze Property Services, Inc. on behalf of Royal Crest for cleanup work on the Premises. (Def.'s S.M.F. ¶ 9.) The contract included a requirement for a "Fall Cleanup" to be "completed in November" that included "removal of leaves from established lawn areas, shrub beds and hard surfaces" and a "Spring Cleanup" that included "[s]weep[ing] entrances, exits, roadways, walkways and parking areas for removal of winter sands."

3

(Def. S.M.F. ¶ 9, at Ex. 2 to Aff. of Jeff Martin.) Seabreeze Property Services is not a party to this action.

Plaintiff contends that Foreside was not conducting regular grounds inspections at the time of her fall because Foreside was having trouble collecting payment from the Associations for "little things." (Pl.'s S.M.F. ¶ 30.) Foreside claims that it did not engage in any grounds maintenance for the Premises, including sweeping or removal of leaves or pine needles. (Def.'s S.M.F. ¶ 10.)

On September 16, 2016, plaintiff brought the instant action asserting negligence claims against the Association (counts I – IV) and Foreside (count V). Defendant Foreside moved for summary judgment, arguing that it owed no duty to the plaintiff.

## Summary Judgment Standard

Summary judgment is appropriate if, based on the parties' statements of material fact and the cited record, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821. "A material fact is one that can affect the outcome of the case. A genuine issue of material fact exists when the fact finder must choose between competing versions of the truth." *Dyer*, 2008 ME 106, ¶ 14, 951 A.2d 821 (internal citation and quotation marks omitted).

To survive a summary judgment motion, a plaintiff must set forth a *prima facie* case for each element of the operative cause of action. *Bonin v. Crepeau*, 2005 ME 59, ¶ 8, 873 A.2d 346; *Burdzel v. Sobus*, 2000 ME 84, ¶ 9, 750 A.2d 573. Plaintiff must, therefore, make a *prima facie* showing as to each element of her negligence claim: duty, breach, causation, and damages. The court reviews the record submitted in the light most favorable to plaintiff, who is the non-moving party. *Id.*

4

## Discussion

Foreside's motion for summary judgment is based on its contention that plaintiff has failed to establish a *prima facie* case of negligence because, as a matter of law, it had no duty to her. First, Foreside asserts that it owed no duty to plaintiff under Maine premises liability law because it did not possess the Premises. Second, Foreside contends it owed no duty under general principles of common law negligence because its conduct did not create the condition that caused plaintiff to fall and injure herself, namely the natural accumulation of pine needles. Finally, Foreside argues that it owed no duty to plaintiff based on its contract with the Association.

### 1. Possession

Whether a party owes a duty of care in tort, and the scope of any duty owed, are questions of law to be determined by the court. *Brown v. Delta Tau Delta,* 2015 ME 75, ¶¶ 9, 14, 118 A.3d 789; *Davis v. R. C. & Sons Paving, Inc.,* 2011 ME 88, ¶ 11, 26 A.3d 787.; *Trusiani v. Cumberland & York Distribs., Inc.,* 538 A.2d 258, 261 (Me. 1988). However, the "inquiry as to the existence of a duty is fact-intensive;" and requires analysis of "facts relevant to foreseeability, control, and the relationship of the parties." *Brown,* 2015 ME 75, ¶ 14, 118 A.3d 789.

In the context of premises liability cases, the existence of a duty generally turns on the question of possession. *Denman v. Peoples Heritage Bank,* 1998 ME 12, ¶ 4, 704 A.2d 411 (citations omitted). "Possession" does not require actual title or ownership. *Id.* A possessor may simply be "one who, by occupancy, manifests an intent to control the land." *Id., quoting Quadrino v. Bar Harbor Banking & Trust,* 588 A.2d 303, 305 (Me. 1991) (internal quotation marks omitted); *see also* Restatement (Second) of Torts § 328E (1979). Whether one manifests an intention to control the land is an issue of fact. *Id., citing Hankard v. Beal,* 543 A.2d 1376 (Me. 1988).

5

There are genuine issues of material facts with respect to the scope of Foreside's responsibilities, undertaking, and control with regard to the Premises. The record sets forth that Foreside was the only entity responsible for maintaining the Premises; was responsible for keeping "the property . . . in a condition at all times acceptable to the Board, including but not limited to such work as cleaning . . . grounds care, and such other maintenance and repair work as may be necessary; had agreed to give "special attention . . . to preventative maintenance work;" had agreed to facilitate regular inspection; and had been delegated all maintenance responsibilities. (Pl.'s S.M.F. ¶¶ 15-19.) Foreside disputes these facts, in whole or part. (Def.'s S.M.F. ¶¶ 15 – 19.) The fact that Foreside subcontracted out some of the maintenance responsibilities does not necessarily negate its responsibilities to oversee, inspect and assure proper maintenance of the Premises, or at least creates a disputed issue factual issue with respect thereto.

In addition, a non-possessor of land may be liable for injuries resulting from its actions in certain circumstances. In *Colvin v. A. R. Cable Services-Me*, 1997 ME 163, 697 A.2d 1289, the Law Court rejected a subcontract's defense that it had no duty, and therefore no liability, for injuries arising from a dangerous condition it had created, merely because it was not in possession of the premises. The Court noted: "[N]egligence is gauged by the ability to anticipate. The common-law test of duty is the probability or foreseeability of injury to the plaintiff." *Id.*, ¶ 7 (citation omitted). The "reasonable foreseeability of injury to others from one's acts or from one's failure to act raises a duty in law to proceed in the exercise of reasonable care. It is not necessary that the precise type of injury be foreseen nor the specific person injured," even if one does not possess the property on which the injury occurs. *Quinn v. Moore*, 292 A.2d 846, 850 (Me. 1972).

6

This principle finds support in section 387 of the Second Restatement of Torts, which provides:

> An independent contractor or servant to whom the owner or possessor of land turns over the entire charge of the land is subject to the same liability for harm caused to others, upon or outside of the land, by his failure to exercise reasonable care to maintain the land in safe repair as though he were the possessor of the land.

Restatement (Second) of Torts § 387 (1979). The comment to this section further explains:

> In order to create liability under the rule stated in this Section it is not necessary that the contractor be given the possession or occupation of the land or building. On the other hand, *the contractor must have taken over the entire charge of the land or building.* It is not enough to create liability under the rule stated in this Section that he has undertaken to make specific repairs, or even to inspect the land or building and from time to time make such repairs as he should discover to be necessary.
>
> Thus a painter employed to paint a room is not given entire charge of the house, even though the owner may vacate it while the work is being done, while one to whom the premises are turned over, even gratuitously, to occupy for two days for a rummage sale has entire charge.

*Id.* cmt. a (emphasis added). The accompanying illustration is also particularly comparable to this case:

> A contracts with the B Realty Company to take charge of his office building, the Company to rent the offices, collect the rents, and see to the repairs, paying over to A from time to time the amount of the rents after deducting the cost of repairs and its expenses and commissions. The B Company fails to exercise reasonable care to keep the building in repair. In consequence the ceiling of one of the offices falls upon C, the tenant, and D, a friend of the tenant paying a social call upon the tenant's invitation. For the same reason a part of the cornice falls upon E, a traveler upon the highway upon which the building abuts. The B Company is subject to liability to C, D, and E.

*Id.*

Although the Law Court has not adopted section 387, its decision in *Campbell v. Sugar Co.*, 62 Me. 552 (1873) reflects the same principle. In *Campbell*, an individual was injured on wharf owned by the Portland Sugar Company, which was leased and

7

occupied by merchants and managed by another entity, who collected the rents and kept the premises in good repair. *Id.* at 566. Although the manager did not maintain a physical presence on the premises, similarly to Foreside here, the Law Court held, "It is the actual personal negligence of the agents which constitutes the constructive negligence of the corporation. The corporation acts through and by them, and they act for the corporation, and when their acts or neglects result in injury to third parties, they are equally responsible with their principals." *Id.*

Foreside contracted with the Association to keep the Premises in a suitable condition acceptable to the Board. The Association "act[ed] through and by" Foreside. At the very least, Foreside's actions and undertakings pursuant to and after the expiration of the one-year Agreement raises a question of fact as to whether Foreside intended to exercise sufficient control over the Premises as to give rise to a duty to the condominium residents, including plaintiff.

Foreside relies upon several "winter weather" cases to support the position that its responsibilities under the Agreement cannot provide a source of duty to plaintiff. *See Denman v. Peoples Heritage Bank,* 1998 ME 12, 704 A.2d 411; *Alexander v. Mitchell,* 2007 ME 108, 930 A.2d 1016.[2] *Denman* and *Alexander* involved public property—a public sidewalk and a public street, respectively. The contractors hired to clear these

---

[2] In *Denman,* a pedestrian was injured in a fall on a public sidewalk. Neither the owner of the abutting land nor the contractor hired to clear the sidewalk had sufficient possession or control to support a legal duty to the pedestrian because a city ordinance required the sidewalk to be clear; and "there was no evidence to support a finding that defendants intended to control the public sidewalk. To the contrary, defendants' actions were involuntary and undertaken in compliance with applicable law." *Denman,* 1998 ME 12, ¶¶ 5-6, 704 A.2d 411. Thus, "any failure to remove snow and ice in violation of an ordinance does not create a cause of action in favor of pedestrians injured thereby." *Id.* ¶ 6, *citing Ouelette v. Miller,* 134 Me. 162, 183 A. 341 (1936). This rule was affirmed in *Alexander v. Mitchell,* 2007 ME 108, ¶ 30 n.13, 930 A.2d 1016. ("[Defendant] did not intend to control the road and instead acted to satisfy the Town's legal obligations pursuant to [statute]. Although [defendant] may have voluntarily signed the contract, the Town's underlying obligation was mandatory, not voluntary. These legal obligations did not generate a common law duty running from [defendant] to [plaintiff].") (citations omitted).

8

areas did not have the requisite intent to control or possess the areas in question. Moreover, they were acting pursuant to an agreement or other obligation based upon town ordinance or state statute. The instant case presents a different situation. Here, Foreside had assumed, undertaken, and acted to discharge responsibility to inspect and maintain the entire Premises, which was private property, for the property owner; and this included "grounds care" and other "preventative maintenance". Questions of material fact remain as to whether Foreside intended to and/or assumed control over the property by virtue of its Agreement with the Association; and if so, to what extent.

### 2. Natural Conditions

Foreside next argues that even if there is a question of material fact concerning its possession or control of the Premises, it cannot be held liable for injuries caused by the accumulation of pine needles, a naturally occurring condition. *Ouelette v. Miller*, 134 Me. 162, 164-65, 183 A. 341, 342 (1936) ("At common law private individuals are not liable for injuries to others occasioned by natural causes.") *See also Davis*, 2011 ME 88, ¶¶ 21-22, 26 A.3d 787 (weather, not contractor, created hazardous condition); *Alexander*, 2007 ME 108, ¶¶ 18-19, 930 A.2d 1016 (snowplow operator did not create dangerous condition; rather, caused by natural accumulation of snow and ice).

Maine law has imposed a duty upon property owners or possessors in situations where they did not "use ordinary care to ensure that the premises are reasonably safe for invitees" due to hazardous conditions created by nature. *Isaacson v. Husson Coll.*, 297 A.2d 98, 103 (Me. 1972) ("mere fact that snow and ice conditions are prevalent during the course of our severe Maine winters is not in and of itself sufficient rationale for the insulation of the possessor of land from liability to his business invitees"). *See also Budzko v. One City Ctr. Assocs.*, 2001 ME 37, ¶ 16 767 A.2d 310 ("Business owners have a duty to reasonably respond to foreseeable dangers and keep premises reasonably

9

safe when significant numbers of invitees may be anticipated to enter or leave the premises during a winter storm."); *Davis*, 2011 ME 88, ¶¶ 23-25, 26 A.3d 787 (*Silver, J.*, dissenting) ("It makes no sense to remove any legal duty at precisely the moment a snow and ice removal business begins to respond to the triggering storm[3], simply because the business had no hand in causing the storm."); Restatement (Second) of Torts § 343 (1979) (possessor who fails to exercise reasonable care may be liable to invitees for harm caused by condition of land if it is known or should have been known); *Brewer v. Roosevelt Motor Lodge*, 295 A.2d 647, 651 (Me. 1972)( "The common-law test of duty is the probability or foreseeability of injury to the plaintiff.")

These cases are consistent with the general notion referenced above that a duty arises out of the "reasonable foreseeability of injury to others" in a situation where a defendant has undertaken or assumed responsibility—here initially at least by virtue of a contract with the property owner—to oversee, inspect and maintain the property. Because there are material facts in dispute as to the extent or scope of Foreside's responsibilities as well as its knowledge of the hazardous condition, its motion for summary judgment is denied.

### 3. Third-Party Beneficiary

Foreside argues further that plaintiff was not a third-party beneficiary of the Agreement as to give Foreside a duty to her. Plaintiff does not address this issue in her

---

[3] Justice Silver in *Davis* also cited to section 324A of the Second Restatement of Torts, which provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
> (b) he has undertaken to perform a duty owed by the other to the third person, or
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts § 324A (1979).

10

opposition, thus it is waived for purposes of this motion. *See Mehlhorn v. Derby*, 2006 ME 110, ¶ 11, 905 A.2d 290 (citations omitted). Because there is still a question of material fact concerning Foreside's duty to plaintiff as discussed above, the motion for summary judgment will be denied and thus it is unnecessary to address this issue.

## Conclusion and Order

Plaintiff has made a *prima facie* showing with regard to her negligence claim, including the element of Foreside's duty of care, as there remain in dispute material facts relevant to that issue.

Accordingly, it is hereby ordered that Foreside's motion for summary judgment is denied; the clerk shall schedule this matter for a trial management conference at the start of the July/August 2018 trial list; and the entry shall be: "Defendant Foreside Real Estate Management, Inc.'s motion for summary judgment denied."

The clerk may incorporate this Order on Motion for Summary Judgment on the docket by reference pursuant to M.R. Civ. P. 79(a).

SO ORDERED.

DATED: May 1, 2018

Wayne R. Douglas
Justice, Superior Court

**ENTERED ON THE DOCKET ON:** 5|1|18

11