KERMIT S. HAINES

*vs.*

CUMBERLAND COUNTY POWER AND LIGHT COMPANY.

LORINE C. HAINES

*vs.*

CUMBERLAND COUNTY POWER AND LIGHT COMPANY.

Cumberland.     Opinion, September 15, 1938.

*Frank P. Preti,* for plaintiffs.
*Verrill, Hale, Dana & Walker,* for defendant.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MAN-SER, JJ.

BARNES, J. Two cases were tried together, and so argued on appeal. Plaintiffs were husband and wife.

The suits were brought to recover damages for alleged injuries to the wife, and for reimbursement of financial loss to the husband.

The operator of defendant's electric car brought it to a stop at Woodfords Corner, and stood in the vestibule, observing an elderly lady, Mrs. MacPheters, Mrs. Haines, her daughter, then about four years old, and Miss Haines coming forward in that order to alight.

He testified that he remarked about the slippery condition of the road, and took hold of Mrs. MacPheters' arm as she took the single step before reaching the roadway; that Mrs. Haines stepped down next and as she turned partially around, reaching for her child, her feet went out from under her and she fell on the roadway, striking Mrs. MacPheters and bringing her down also.

In her declaration, Mrs. Haines alleges that "as she stepped down from the platform of the electric car to a step attached to it in order to reach the ground, her foot which came in contact with the step, suddenly slid out from underneath her, causing her to fall with great force and violence on her back, in the street, at the same time striking the upper part of her back against the car step, causing her severe physical injuries"; with usual allegations of negligence on the part of defendant, and due care on her part.

The time of the stop at the corner was shortly after 4 P.M. on February 11, 1935.

The day was clear, the streets covered with ice; no snow had fallen for two days.

The temperature had ranged from +36 degrees at 1 P.M. to +26 degrees at 4 o'clock.

The surface of the ice on roadways is described as "slushy" at the time of plaintiff's fall, and the road ice, smoothed by automobile wheels, extended to and under the running board of the electric car.

The car was manned by but one operator, with entrance and exit at the front, the step, about ten inches wide, turning to horizontal position automatically as the door was opened, and returned to vertical position, upper surface parallel with the side of the car, as the door was shut.

From all the testimony, negligence of defendant, which must be proved, can only be found, if the upper surface of the step as the passenger alighted, was dangerously icy, as the result of the exercise of less then due care on the part of defendant's agent, the operator of the car.

Mrs. MacPheters testified that she didn't see any ice on the car step, Mrs. Haines that she did not look at the step; while the operator of the car testified that he observed the condition of the step as he assisted Mrs. MacPheters to alight, "that it was in perfect condition. There was no accumulation of any kind on it," and Miss Haines testified that the step "was kind of a slushy ice. Looked as if it was freezing."

The sole issue in the case (for the jury must have decided that plaintiff slipped and fell before she had stepped on the icy roadway), was whether the defendant, by its employee, the operator of its car, negligently "allowed and permitted the said car step to become icy and slippery, so as to be dangerous and unsafe" for use of passengers.

It was perhaps impossible for the jury to reconcile the testimony so as to bring to agreement the statements on their face at variance.

The operator testified that he looked at the step while helping Mrs. MacPheters down, and that it was not slippery.

Miss Bruce, a disinterested witness who alighted at the next stop testified that she did not see any snow, ice or material of that sort

or slush on the car step; that she did not slip. In her cross-examination we find the following:

"Q. Miss Bruce, did you make any special attempt to observe the condition of the step after you got off?
A. Well, I always look when I get off like that. . . .
Q. As far as you know, there might have been some ice or frozen material on it and you not notice it?
A. I think I would have noticed it.
Q. It could have been there without your noticing?
A. I think I would have slipped too."

Mrs. MacPheters and the plaintiff, Mrs. Haines, testified that they did not look at the step.

Miss Haines, young sister-in-law of plaintiff, testified that she followed plaintiff in alighting; that she looked at the step. It was kind of slushy ice. Looked as if it was freezing.

Mrs. Haines testified that she did not hear the operator say anything to Mrs. MacPheters about being careful because it was slippery there. Mrs. MacPheters said she heard the warning, and the sister-in-law; that she heard it. But the jury evidently absolved the plaintiff from any negligence in not looking at the step.

That she was not guilty of negligence, the jury decided.

But, for the purposes of the trial then in their hands, they decided the defendant guilty of negligence.

On this point this Court in *Davis* v. *Waterville, Fairfield & Oakland Railway*, 117 Me., 32, 102 A., 374, said:

"We think the true rule as to the duty of the carrier under such conditions is this: Assuming that the steps of the car are in proper condition when it begins a specific journey, the railroad company should not be held responsible, under ordinary circumstances, for the existence of snow or ice upon the steps accumulating through natural causes, during the journey, until it has had a reasonably sufficient time and opportunity, consistently with its duty to transport its passengers, to remove such accumulations. To require the immediate and continuous removal of all snow from the steps . . . would be impracticable."

Since the date of the opinion above quoted in part, in *Labrie* v. *Donham*, 243 Mass., 584, 138 N. E., 3, a case in many particulars like the case in hand, that court says, "In the case at bar the mere fact that the step was wet and slippery when the plaintiff alighted, as testified to by some of the witnesses, without further evidence tending to show the extent and cause of this condition and the length of time it had existed, did not prove that the defendant was negligent or that the car was defective."

The jury no doubt listened to the recital of pain and limited physical ability on the part of plaintiff wife, and attributed her present incapacity and possible future suffering solely to the fall at the crossing, forgetting that in November, 1933, she submitted to major surgery, curettage, repair of the cervix, appendectomy, a subtotal hysterectomy, including both tubes and ovaries; that she developed adhesions which caused intestinal obstruction and was operated on, one year before the accident to release the adhesions.

Faced with such recital, in despite of all testimony that, immediately after the accident she could have been cured in three or four months' time, at an expense of from $300 to $400, they awarded to her damages for pain and suffering in the amount of $2500; and to the husband their verdict gives as expense to him in attempting to repair what damage the railroad company had caused the sum of $1000, while such expense is by testimony and stipulation fixed at $125.

It seems evident that the jury were swayed by other than the weight of factual testimony, and that they erred in their conclusions.

In each case the entry must be

*Verdicts set aside,*
*new trials granted.*