2007 ME 108

**Steven ALEXANDER**

v.

**Philip MITCHELL.**

Supreme Judicial Court of Maine.

Argued: May 24, 2007.
Decided: Aug. 14, 2007.

N. Laurence Willey, Esq., Thomas M. Matzilevich, Esq., Marie E. Hansen, Esq. (orally), Willey Law Offices, Bangor, for the appellant.

David L. Herzer, Esq. (orally), Norman, Hanson & DeTroy, Portland, for the appellee.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

SAUFLEY, C.J.

[¶ 1] The question before us is this: Does a person or company that has contracted with a municipality to plow, salt, and sand the town's roads owe a general duty of care to all members of the public using those roads based on the terms of the contract? In the circumstances of the matter before us, we conclude that no such duty is owed.

[¶ 2] Steven Alexander appeals from the Superior Court's grant of a summary judgment (Penobscot County, *Mead, J.*) in favor of the plowing contractor, Philip Mitchell. Alexander contends that the court erred in determining that Mitchell did not owe a duty of care to Alexander's wife, Michelle, who died in a motor vehicle collision on a slippery road in the Town of Glenburn. Because we agree with the motion court that the law in Maine does not impose a duty on Mitchell under these circumstances, we affirm the judgment.

## I. BACKGROUND

[¶ 3] A major snowstorm blanketed the Town of Glenburn on December 15, 2003,

leaving snow and ice on the Town's roadways. On December 16, Michelle Alexander and her son were involved in a collision on Pushaw Road in Glenburn with a van that was owned by Adelphia Cablevision Corporation and driven by Adrian Miller. Michelle, who had been operating her vehicle, died in the accident.

[¶ 4] At the time of this collision, Philip Mitchell was contractually obligated to the Town to plow several of its roads, including Pushaw Road. Pushaw Road is a state aid highway [1] that is used by the public on a daily basis. By contract, Mitchell was obligated to plow the roads for which he was responsible when the depth of snow on the roads exceeded one-and-one-half inches, to clear accumulated slush, and to provide at least three trucks for regular service. Mitchell was characterized in the contract as an independent contractor and was required to maintain general and automobile liability insurance policies. Mitchell also agreed to indemnify the Town from all claims arising out of negligent acts or omissions occurring during the course of his duties under the contract.

[¶ 5] On October 31, 2005, Steven Alexander, both individually and as the personal representative of Michelle's estate, filed a complaint against Adelphia, Miller, and Mitchell. Alexander did not sue the Town, nor would such a claim have been successful. *See* 23 M.R.S. § 1005–A(1) (2006).

[¶ 6] The complaint alleged that Pushaw Road was covered with snow and slush at the time of the accident and had not been properly cleared or sanded; that Miller

and Adelphia were liable for Michelle's injuries and death; and that Mitchell was liable for Michelle's death because he had negligently failed to clear and maintain Pushaw Road, and had therefore violated his duty of care to her. Mitchell filed a cross-complaint against Adelphia and Miller for contribution or indemnification based on their "negligence, breach of contract, statutory liability, and/or intentional acts...." Adelphia and Miller responded with cross-claims against Mitchell on the same grounds.

[¶ 7] Mitchell later filed a properly supported motion for summary judgment in which he asserted that he owed no legal duty to Michelle Alexander to remove snow and ice from Pushaw Road. Adelphia and Miller jointly filed an opposition to Mitchell's motion for summary judgment with an opposing statement of material facts, arguing that Mitchell had owed a legal duty to plow Pushaw Road because he had voluntarily entered into a contract with the Town and had undertaken plowing of the Town's roads.

[¶ 8] Steven Alexander opposed Mitchell's motion for summary judgment, asking the court to conclude that Mitchell had had a duty to keep Pushaw Road free of snow and ice based on his voluntary contractual obligations to the Town. Alexander also filed an opposing statement of material facts, *see* M.R. Civ. P. 56(h)(2), which in essence asserted that Mitchell had failed to satisfy his obligations under the terms of the contract, resulting in the dangerous condition of Pushaw Road on the day of the accident.[2]

---

**1.** State aid highways connect local roads to the State Highway System and generally serve intracounty rather than intrastate traffic movement. Maine Department of Transportation, Road Classification, http://www.maine.gov/mdot/maines-transportation-systems/road classification.php (last visited Aug. 8, 2007); *see* 23 M.R.S. § 801 (2006). With the excep-

tion of compact areas, state aid highways are usually maintained by the Maine Department of Transportation in the summer and by the municipalities in the winter. *See* 23 M.R.S. §§ 802, 1003 (2006).

**2.** According to the parties' statements of material facts, Mitchell had one plow truck ac-

[¶ 9] Alexander, Adelphia, and Miller later stipulated to the dismissal of the claims and cross-claims against Adelphia and Miller, based on a proposed settlement. The court approved the settlement and dismissed the claims and cross-claims with prejudice.

[¶ 10] Based on the arguments of the parties, the court granted a summary judgment in favor of Mitchell against Alexander. The court recognized our decision in *Denman v. Peoples Heritage Bank, Inc.*, 1998 ME 12, 704 A.2d 411, as an analogous situation, and therefore concluded that Mitchell was not liable to Alexander because Mitchell had not asserted ownership or control of the road and because his contract with the Town did not give Alexander rights as a third-party beneficiary. The court also determined that Mitchell had not assumed an independent duty of care by voluntarily undertaking an obligation because the Town was required by law to keep the roads clean of snow and ice. The court further concluded that Mitchell was not liable because the hazard in this case, the slippery road, was created by severe weather conditions, and not Mitchell's failure to plow. Thus, the court concluded that no legal duty existed, and it granted summary judgment in Mitchell's favor and later dismissed the cross-claims against him. Following entry of the summary judgment, Alexander filed a motion for findings of fact and conclusions of law, which the court appropriately denied.[3]

[¶ 11] Prior to the court's grant of summary judgment in favor of Mitchell, Alexander had moved for an enlargement of time to amend his opposition to Mitchell's motion for summary judgment and to include a statement of additional facts. In its later order denying Alexander's motion for findings of fact, the court explained that it had denied Alexander's motion to amend because the proffered facts would not have altered its decision to grant a summary judgment.[4]

## II. DISCUSSION

### A. The Question Presented on Appeal

[¶ 12] Before us, Alexander asserts a claim against Mitchell sounding in tort, but springing from the existence of Mitchell's contract with the Town. Alexander no longer presses a claim of breach of contract as a third-party beneficiary under the Town's contract. Nor does he assert an ordinary motor vehicle negligence claim such as would be asserted had Mitchell's plow and Michelle Alexander's vehicle collided in the snow. Rather, Alexander argues that when Mitchell entered into the contract with the Town, he assumed a duty of care, remediable in tort by all members of the public using the Glenburn roads, to eliminate or reduce the hazards of snow and ice from the roads that he was responsible for plowing. Thus, Alexander argues that he has presented sufficient facts to survive summary judgment with regard to

tive on the day of the accident, but other plow trucks may have been operating.

3. A motion for findings of fact, pursuant to M.R. Civ. P. 52, is inapplicable to the summary judgment process. A motion for summary judgment tests for the existence of material disputed facts. Courts *do not make factual findings* in considering a motion for summary judgment. Rather, reviewing only the facts that have been properly presented in the light most favorable to the party against whom judgment is sought, the court

determines whether sufficient facts have been presented to establish each of the elements of the cause of action at issue. *Curtis v. Porter*, 2001 ME 158, ¶¶ 8–9, 784 A.2d 18, 22.

4. Contrary to Alexander's contentions, the court did not abuse its discretion in denying his motion to amend, where the proposed amendment would not have affected the court's determination on the existence of a duty. *See Bahre v. Liberty Group, Inc.*, 2000 ME 75, ¶ 7, 750 A.2d 558, 560.

the question of whether Mitchell's actions met or failed to meet the standard of care of a snow plow contractor. If a duty exists, we agree that the question of whether there was a breach of the standard of care would ordinarily be a question for a fact-finder, not susceptible on this record to summary judgment.

[¶ 13] The question presented then is whether Mitchell, upon entering into a contract to plow the Town's roads, undertook a duty to protect members of the road-using public from ice and snow. The motion court found that Mitchell did not assume that duty. We agree.[5]

### B. Standard of Review

[¶ 14] We review the entry of a summary judgment de novo, viewing all facts in favor of the nonmoving party. *See Penn v. FMC Corp.*, 2006 ME 87, ¶ 6, 901 A.2d 814, 815. To survive summary judgment in a negligence action, the plaintiff must establish a prima facie case showing duty, breach, causation, and damages. *Maravell v. R.J. Grondin & Sons*, 2007 ME 1, ¶ 7, 914 A.2d 709, 712. Although the ultimate determination of whether a party was negligent is ordinarily a question of fact, *Wyman v. The Osteopathic Hosp. of Me., Inc.*, 493 A.2d 330, 335 (Me. 1985), the existence of a duty and the scope of that duty are questions of law, *Decker v. N.E. Pub. Warehouse, Inc.*, 2000 ME 76, ¶ 7, 749 A.2d 762, 765.

[¶ 15] Here, there are no facts in dispute with regard to the existence of a duty, and we will determine whether, as a matter of law, Mitchell owed a duty to the traveling public in Glenburn. The existence of a duty, without which liability cannot be imposed on a defendant in a matter sounding in tort, has been the basis of myriad judicial opinions and treatises.

We have no difficulty in pronouncing *what* duty is: it " 'involves the question of whether the defendant is under any obligation for the benefit of the particular plaintiff.' " *Searles v. Trs. of St. Joseph's Coll.*, 1997 ME 128, ¶ 5, 695 A.2d 1206, 1209 (quoting *Trusiani v. Cumberland & York Distribs., Inc.*, 538 A.2d 258, 261 (Me.1988)) (quotation marks omitted). In a tort analysis, " 'the duty is always the same—to conform to the legal standard of reasonable conduct in the light of the apparent risk.' " *Id.*

[¶ 16] The more difficult legal question, obviously, is not the "what" but the "when." In analyzing those claims that do not rest on well-established notions of duty, or that seek to expand duty into new areas, determining *when* a duty will be imposed requires the analysis of multiple factors. Although the foreseeability of an injury is a foundational consideration, it is never the sole determinant of duty. *Cameron v. Pepin*, 610 A.2d 279, 282 (Me.1992). We must always consider societal expectations regarding behavior and individual responsibility in allocating risks and costs, and we consider " 'the hand of history, our ideals of morals and justice, the convenience of administration of the rule, and our social ideas as to where the loss should fall.' " *Decker*, 2000 ME 76, ¶ 7, 749 A.2d at 765 (quoting *Cameron*, 610 A.2d at 282). We turn then to the expectations and assumptions that have existed historically in matters relating to the reduction or elimination of risks caused by winter weather.

### C. Analysis

#### 1. Maine's Common Law to Date

[¶ 17] Addressing the existence and scope of a duty as it relates to reducing and eliminating the driving risks created

---

5. Because we hold that Mitchell was not liable in tort to Alexander, we do not discuss Alexander's unpreserved argument that the court violated the "open courts" provision of the Maine Constitution. ME CONST. art. I, § 19.

by Maine winters requires us to establish the context in which such decisions are made. The normal annual snowfall statewide in Maine is approximately eighty-five inches.[6] Due to Maine's expansive land area,[7] this number varies greatly from town to town depending upon factors such as altitude, latitude, and proximity to the Atlantic Ocean. For instance, an inland town, Caribou, receives an average annual snowfall of 116 inches, whereas Portland, a southern coastal city, receives an average annual snowfall of about sixty-six inches.[8] The risk of icy roads in the winter is equally substantial. Over the past ten years, the average statewide winter temperature in Maine has ranged from 14.1 degrees Fahrenheit to 23.4 degrees Fahrenheit.[9]

[¶ 18] Because the volume and frequency of snowfall in Maine is so pervasive, the common law in this state has not assigned open-ended responsibility for snow-related accidents. *See, e.g., Denman*, 1998 ME 12, 704 A.2d 411; *Ouelette v. Miller*, 134 Me. 162, 183 A. 341 (1936). Our common law reflects the widely held public acceptance of heavy snowfall and difficult driving as facts of life in Maine.

[¶ 19] A glimpse into Maine's legal history yields case law reaching back into the

nineteenth century illustrating our viewpoint on common law duties as they relate to snow and ice. Over the years, we have made clear that an individual's common law duty will extend only so far in negligence actions related to winter weather, and we have on multiple occasions defined, limited, and restricted this duty.

[¶ 20] In 1879, we held that a railroad company was under no obligation to keep the sidewalk north of its location free from a "defective condition" of snow and ice where the plaintiff had sustained injuries from slipping and falling as he approached the railroad depot. *Quimby v. Boston & Me. R.R. Co.*, 69 Me. 340, 341–42 (1879). In *Lee v. McLaughlin*, the plaintiff sustained injuries stemming from snow falling off a roof and he sought to hold the building's landlord liable in a negligence action. 86 Me. 410, 411, 30 A. 65, 65–66 (1894). We determined that it was the occupier (tenant) of the building who was bound, as between himself and the public, to keep buildings abutting the streets in good repair so that they would be safe for travelers passing by. *Id.* at 411, 30 A. at 66. The building owner, however, did not owe a duty to the plaintiff. *Id.* In 1905, we held that a defendant homeowner was not liable for a plaintiff's injuries stemming from a slip and fall on naturally occurring

---

6. *See* National Weather Service Forecast Office, Gray/Portland, http://www.erh.noaa.gov/er/gyx/climo/Mean_Monthly_Snowfall.txt (last visited Aug. 8, 2007). According to the National Weather Service, "Normal" is a thirty-year average that is recalculated every ten years. Currently, data is calculated from 1971–2000. *Id.* Maine has over seventy weather stations that measure snowfall. Our estimate of eighty-five inches represents the mean of six stations' data. *See id.* These six stations are a sample of Maine's weather stations, representative of areas across the state. *See id.* For purposes of this opinion, we have averaged the stations' data.

7. Maine comprises a total land area of approximately 33,215 square miles. The Offi-

cial Website of Maine, Facts & History, Facts About Maine, http://www.maine.gov/portal/facts_history/facts.html (last visited Aug. 8, 2007).

8. *See* National Weather Service Forecast Office, Gray/Portland, http://www.erh.noaa.gov/er/gyx/climo/Mean_Monthly_Snowfall.txt (last visited Aug. 8, 2007).

9. National Climatic Data Center (NCDC), U.S. Climate at a Glance, http://www.ncdc.noaa.gov/oa/climate/research/cag3/cag3.html (select Statewide analysis; select Maine; then select the mean temperature for winter between 1997 and 2007) (last visited Aug. 8, 2007).

ice on a sidewalk abutting the defendant's property. *Greenlaw v. Milliken*, 100 Me. 440, 442, 62 A. 145, 146 (1905). Similarly, in *Rosenberg v. Chapman National Bank*, we held that the defendant landlord owed no duty of care to the plaintiff, a tenant who had slipped and fallen on icy stairs outside the apartment building. 126 Me. 403, 405, 139 A. 82, 83 (1927).

[¶ 21] In 1928, we held that although the defendant, a railroad company, was required to use due care to provide a reasonably safe workplace, this duty did not extend to an accident sustained by the plaintiff, an employee, that resulted from slipping and falling while walking across timber covered with snow and ice in an open boxcar. *Morey v. Me. Cent. R.R. Co.*, 127 Me. 190, 193, 142 A. 585, 586 (1928). There we noted again the context in which duty is considered in a state with harsh winters:

> The evidence brings this car of lumber from which the plaintiff fell, down from Northern Maine in February, a section of the State and season of the year marked by low temperatures and frequent falls of snow. Railroads are there operated subject to all the incidents of such climatic conditions, and open cars and their loads of necessity at times accumulate snow and ice. In safeguarding its employees from injury, the railroad is bound to use due care to make its cars and their loads reasonably safe for the passage of its brakemen, but it is not bound to anticipate and guard against every possible danger, or such as no prudent person would reasonably expect to happen.

*Id.*

[¶ 22] In 1936, we held that at common law, private individuals were not liable for injuries to others occasioned by natural causes, such as snow and ice on a sidewalk abutting a person's home, which had caused the plaintiff to slip and fall. *Ouelette*, 134 Me. at 164, 183 A. at 342. In 1938, we addressed the issue of common carriers in relation to snow and ice when a plaintiff passenger was injured after slipping on an icy lower step as she tried to disembark from a street car, and we concluded that requiring the carrier to fully protect against hazards created by snow and ice was simply impracticable:

> We think the true rule as to the duty of the carrier under such conditions is this: Assuming that the steps of the car are in proper condition when it begins a specific journey, the railroad company should not be held responsible, under ordinary circumstances, for the existence of snow or ice upon the steps accumulating through natural causes, during the journey, until it has had a reasonably sufficient time and opportunity, consistently with its duty to transport its passengers, to remove such accumulations. To require the immediate and continuous removal of all snow from the steps ... would be impracticable.

*Haines v. Cumberland County Power & Light Co.*, 136 Me. 60, 63, 1 A.2d 353, 354 (1938) (quoting *Davis v. Waterville, Fairfield & Oakland Ry.*, 117 Me. 32, 33, 102 A. 374, 375 (1917)).

[¶ 23] Building on our decision in *Ouelette*, we recently once again confirmed that defendants, as owners and occupants of the land abutting the street, do not owe a duty to others for injuries resulting from the natural accumulation of snow and ice. *Denman*, 1998 ME 12, ¶ 6, 704 A.2d at 413–14.[10]

---

**10.** Similarly, in *Noyes v. R.E. Coleman, Inc.*, 2002 WL 31367234, the Superior Court (Cumberland County, *Cole, J.*) held that the defendant, a snowplow contractor, did not owe a duty of care to the plaintiff, a bank employee who had slipped and fallen in a bank parking lot that the defendant was con-

[¶ 24] Contrary to Alexander's argument, our long-established limitation on liability related to winter weather hazards was not changed by our holding in *Budzko v. One City Center Associates Limited Partnership*, 2001 ME 37, 767 A.2d 310, and *Budzko* is not helpful in the question of duty before us. There, we held that the evidence was sufficient to establish that the defendants, business property owners, had failed to exercise reasonable care in keeping *their own premises* reasonably safe. *Id.* ¶ 1, 767 A.2d at 312. The defendants owned the building on which the accident occurred. *Id.* ¶ 2, 767 A.2d at 312. The area where the injury occurred was quite limited, comprising only an icy stairway on the side of the building. *Id.* ¶ 5, 767 A.2d at 313. The alleged fall occurred during business hours when the defendants had encouraged hundreds of invitees to enter the premises and when the property owner could reasonably have been expected to know that the steps were unsafe. *Id.* ¶¶ 13, 15, 767 A.2d at 314, 315. Thus, our holding in *Budzko* was much more informed by the nature of landowner liability for hazardous conditions than it was related to the buildup of snow and ice. No open-ended duty was asserted. Rather, the defendants were charged with the ordinary responsibility of a landowner, regarding a small and manageable part of its property, to make reasonable efforts to reduce risks to those using the property. In contrast, here, we are focused on what duty, if any, is owed to a private party on the public roads by a contractor who is responsible for many such roads. *Budzko*, therefore, provides very little guidance.

[¶ 25] The facts in the matter before us are much more similar to those in *Denman*. There, a maintenance company and a bank (the defendants) contracted to keep the public sidewalks outside the bank clear of ice and snow, as required pursuant to a municipal ordinance. *Denman*, 1998 ME 12, ¶ 2, 704 A.2d at 413. The plaintiff slipped on the sidewalk on a day when the company had failed to clear it. *Id.* We affirmed the Superior Court's grant of summary judgment in favor of the defendants. *Id.* ¶ 1, 704 A.2d at 412–13. We held that the defendants did not owe a duty to the plaintiff as a possessor of land because they had not intended to control the sidewalk and because their actions were "involuntary and undertaken in compliance with applicable law." *Id.* ¶¶ 5, 7, 704 A.2d at 413, 414.[11] The maintenance company and the bank did not create a duty to others by undertaking to clear the sidewalk because the company had not affirmatively performed in any way that day, and thus could not have created a hazard. *Id.* ¶¶ 10–11, 704 A.2d at 415. In the case before us, Mitchell, like the defendant in *Denman*, had a duty only to the Town to perform in accordance with the terms of his contract, and he did not owe a duty of care to other private parties.

2. Maine's Legislative Law to Date

[¶ 26] In reviewing "our social ideas as to where the loss should fall," *Trusiani*, 538 A.2d at 261 (quoting William L. Prosser, *Palsgraf Revisited*, 52 MICH. L. REV. 1, 15 (1953)), and before expanding the common law in an area of law that has been addressed in part by the Legislature, we will look to the Legislature to determine how it has addressed similar policy

---

tracted to plow. 2002 Me.Super. LEXIS 148, *6 (September 18, 2002).

**11.** The term "involuntary" was used by this Court to mean "dictated by authority" or "compulsory," as opposed to "springing from accident or impulse" or "not subject to control of the will." *See Denman v. Peoples Heritage Bank, Inc.*, 1998 ME 12, ¶¶ 5, 7, 10, 704 A.2d 411, 413, 414, 415; WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY UNABRIDGED 1191 (2002).

considerations. *Cf. Gafner v. Down E. Cmty. Hosp.,* 1999 ME 130, ¶ 42, 735 A.2d 969, 979.

[¶ 27] The Legislature has also sought a balance between addressing the danger of winter roads and limiting potentially extensive liability from snow and ice related accidents. In so doing, the Legislature has declared that towns are responsible for managing snow removal on state aid highways:

> Towns shall keep state aid highways cleared of snow during the winter season or such part of the year as the department may direct, so that they may be reasonably usable by motor vehicles. Snow on such state aid highways shall be removed to the outside edges of the shoulders of the road, and in a manner satisfactory to the department whose judgment shall be final. The towns shall sand the state aid highways to the satisfaction of the department, and in case the towns fail to sand the highways to the satisfaction of the department, the department shall be authorized to make arrangements for the proper sanding and the cost of such sanding done by the department shall be paid by the towns.

23 M.R.S. § 1003 (2006).

[¶ 28] Balancing this responsibility, however, is the legislative determination that towns may not be held liable in money damages if collisions and other accidents still occur: "The State or the town shall not be liable for accidents while the road surface is covered with snow or ice." 23 M.R.S. § 1005–A(1). Thus, the Legislature has concluded that liability must be limited because the assignment of risk related to winter weather could create boundless liability.

### 3. Other States' Common Law

[¶ 29] Courts in other states affected by snowy winter weather conditions have been similarly reluctant to create open-ended common law duties to prevent injuries caused by the presence of ice or snow. For example, the Colorado courts have been unwilling to impose liability for injuries on public property caused by natural obstacles or weather conditions, such as snowfall. *See, e.g., Bittle v. Brunetti,* 750 P.2d 49, 53 (Colo.1988). The Colorado Supreme Court has refused to shift the risk of injuries incurred on snowy and icy public sidewalks from injured pedestrians, who presently bear the burden, to people owning or occupying private property abutting public sidewalks. *Id.* at 54. The "no duty" rule is firmly embedded in Colorado's jurisprudence. *Id.* at 51–52. This rule is the common law in the majority of snowy jurisdictions.[12] *Id.* at 52.

### 4. The Case Before Us Today

■ [¶ 30] We turn then to Alexander's argument that we should adopt a previously unrecognized common law tort duty in this instance where the parties' relationship is informed by Mitchell's contract with the municipality. In essence, Alexander contends that Mitchell willingly undertook the task of snow and ice removal, was aware of his duties under the contract, and if he is found to have failed to perform his duty to maintain Pushaw Road, should be liable to injured members of the public in money damages.[13]

---

12. *See, e.g., Wells v. Great Atl. & Pac. Tea Co.,* 171 Ill.App.3d 1012, 121 Ill.Dec. 820, 525 N.E.2d 1127 (1988) (limiting a defendant's duty under circumstances involving potential liability for snow and ice related accidents); *Birdsall v. Abrams,* 105 Wash.App. 24, 19 P.3d 433 (2001) (same); *cf. LaDue v. G & A*

*Group, Inc.,* 241 A.D.2d 791, 660 N.Y.S.2d 215 (N.Y.App.Div.1997) (same);

13. In the circumstances of this case, we find other arguments regarding tort liability unpersuasive. Mitchell did not owe a duty to Alexander as a possessor of land. *See Den-*

[¶ 31] Applying the analysis above, we decline to shift liability to private parties, such as Mitchell, who contract to plow a municipality's roads. In doing so, we note that Mitchell's contractual obligation was to the Town; the Town was immune from liability through legislative action; the contractual responsibility was for the plowing of public roads; the precipitating cause of the road conditions was weather, not Mitchell's actions; and the assignment of a duty in tort in these circumstances could result in open-ended responsibility for those plowing Maine's roads. Our conclusion is based not only on legal precedent, but also on common law principles: creating a new duty is disfavored because of the pervasiveness of the annual risk caused by ice and snow on Maine roads. *Cf. Denman*, 1998 ME 12, ¶¶ 6–7, 704 A.2d at 413–14 (limiting a defendant's duty under circumstances involving potential liability for snow and ice related accidents); *Ouelette*, 134 Me. at 166, 183 A. at 343 (same).

[¶ 32] In sum, on the facts of the matter before us, we agree with the Superior Court that Mitchell did not owe a duty to Alexander, and we decline Alexander's request to expand the common law duty of a person or company that is responsible for clearing the roads in the winter.

The entry is:

Judgment affirmed.

*man*, 1998 ME 12, ¶¶ 5, 7, 704 A.2d at 413, 414. Like the bank and contractor in *Denman*, Mitchell did not intend to control the road and instead acted to satisfy the Town's legal obligations pursuant to 23 M.R.S. § 1003 (2006). Although Mitchell may have voluntarily signed the contract, the Town's underlying obligation was mandatory, not voluntary. *See id.* ¶ 10, 704 A.2d at 415. These legal obligations did not generate a common law duty running from Mitchell to Alexander. *See Ouelette v. Miller*, 134 Me. 162, 164, 166–67, 183 A. 341, 342, 343. Finally, Mitchell did not owe a duty based on a failure to affirmatively act because he did not create the dangerous situation on Pushaw Road; rather, the danger was created by the natural accumulation of ice and snow. *See id.*