STATE OF MAINE                                    SUPERIOR COURT

Sagadahoc, ss.

KELLY MAILLET

            **Plaintiff-Appellee**

        v.                                    Docket No. BATSC-AP-11-001

DAVID ANDERSON

            **Defendant-Appellant**

## DECISION AND JUDGMENT

Before the court is the appeal of David Anderson from the judgment entered against him in a small claims action brought by Kelly Maillet.

As permitted by the Maine Rules of Small Claims Procedure, Defendant-Appellant Anderson has appealed on questions of law and has also made a jury trial demand on issues triable to a jury. *See* M.R.S.C.P. 11(d)(2); Notice of Appeal Ex. A.

At a conference in this case, it was agreed that, before any discovery and other pretrial proceedings were scheduled in anticipation of a jury trial, the court would decide the foundational legal issue of whether Defendant-Appellant Anderson owed a duty of care to Plaintiff-Appellee Maillet for purposes of liability for negligence or negligent misrepresentation.[1] *See Alexander v. Mitchell*, 2007 ME 108, ¶ 14, 930 A.2d 1016, 1020 (existence and scope of duty of care are questions of law). Accordingly, the parties have filed briefs on the issue of the existence of a duty, and the court elects to rule without oral argument. *See* M.R. Civ. P. 7(b)(7).

### Factual and Procedural Background

---

[1] The Plaintiff-Appellee's brief makes it clear that her claim is based only on theories of negligence and negligent misrepresentation.

The pertinent facts can be summarized as follows for purposes of this Decision and Order, bearing in mind that some facts would be dispute for purposes of jury trial:

Defendant-Appellant David Anderson is engaged in the business of providing inspections of septic systems. In 2009, he was retained by Hannah and Doug Welling to perform an inspection of the septic system at the residence of Plaintiff-Appellee Kelly Maillet at 46 Libby Lane, Brunswick, Maine. The Wellings had already signed a contract to purchase the home from Ms. Maillet for $171,000, subject to an inspection contingency that included the septic system.

Mr. Anderson went to the Maillet residence May 14, 2009 and inspected the septic system. In a written report the same day, he described the septic system as "Failed-Flooded" and recommended a study of the cost and feasibility of a replacement septic field. He provided his report to the Wellings. In an affidavit filed as part of his appeal, he indicates that he spoke to the Wellings and told them that the septic system was working on the day of his visit but he had concerns about its viability because it had flooded in the past.

As soon as she learned of Mr. Anderson's report, Ms. Maillet commissioned another inspection of the home's septic system by a different inspector, Pat Jackson, Inc., and obtained a report, dated May 20, 2009, that pronounced her home's septic system to be in satisfactory working condition. She forwarded her report to the Wellings. Meanwhile, she and the Wellings agreed to extend the Wellings' deadline within which to exercise their right to terminate under the home inspection contingency.

On or about May 26, 2009, the Wellings notified Ms. Maillet that they were exercising their option under the contingency to terminate the purchase and sale agreement based on concerns about the home's septic system. Ms. Maillet later sold her home to another buyer for

2

$167,500, or $3,500 less than the contract price she would have received under her purchase and sale agreement with the Wellings.

Ms. Maillet has since obtained an additional opinion from the director of the Maine Subsurface Wastewater Disposal Program that is critical of Mr. Anderson's work and report.

She filed a small claims action against Mr. Anderson in the West Bath District Court, seeking $3,500 for the difference in selling price, and another $340 for the cost of the Pat Jackson, Inc. inspection. The small claims court heard the case December 9, 2010. Both parties appeared and presented evidence.

After hearing, the small claims court awarded judgment to Ms. Maillet against Mr. Anderson for the full $3,840 claimed, plus court costs. *Maillet v. Anderson*, West Bath Dist. Ct., Docket No. WESDC-SC-10-0428 (Dec. 9, 2010) (Mallonee, J.). On the Notice of Judgment, the court noted, "Defendant used a specialized term in his opinion that unintentionally misled Plaintiff and third parties as to the scope of the defect he saw."[2]

Defendant-Appellant Anderson took a timely appeal. Neither party has provided a transcript of the testimony, but there is no dispute as to several salient points:

- The parties had no contractual relationship. Mr. Anderson's contract was with the Wellings, and he prepared his report for their consideration and guidance.

---

[2] In the absence of a trial transcript, it is not clear what "specialized term" the small claims court had in mind. The "Failed-Flooded" reference can and perhaps would be interpreted to mean that the Maillet home's septic system was in a failed and flooded condition at the time of the inspection, whereas, according to the Anderson affidavit, what he meant to indicate was that it had failed and flooded in the past, not necessarily that it was totally non-functional as of his inspection.

However, the court's reference to an unintentionally misleading term makes it clear that the ruling in favor of Ms. Maillet was predicated on a theory of negligent misrepresentation. Were there a jury trial on Ms. Maillet's claim, exactly what information Mr. Anderson conveyed to the Wellings, in writing and orally, would almost certainly be an issue for trial, along with the issues of whether Mr. Anderson was negligent in reporting his conclusions and whether any such negligence was the proximate cause of Ms. Maillet's claimed loss.

3

- Ms. Maillet did not take any action in reliance on anything Mr. Anderson said or wrote. To the contrary, she rejected what she understood to be his opinion of her home's septic system and immediately sought to obtain a contrary opinion.

- The Wellings did act in reliance on Mr. Anderson's opinion, in that their stated reason for terminating the purchase and sale contract was due to their concern about the functionality of the septic system.

## Analysis

Counsel for the parties have submitted useful legal memoranda on the limited issue now before the court—whether, as a matter of law, Defendant-Appellant owed a duty of care to Plaintiff-Appellee. The parties have not identified any Maine cases directly addressing the issue—or in fact, any cases from other jurisdictions addressing whether a septic system inspector can be held liable for negligence or negligent misrepresentation to a third party in this context.

This court's task is to determine what is the law in Maine on the issue, or, more precisely, to ascertain how the Supreme Judicial Court of Maine, sitting as the Law Court, would resolve the issue. Perhaps the best guide to how the Law Court would answer a question is to examine how it has answered similar questions.

In *Alexander v. Mitchell,* the court noted:

In analyzing those claims that do not rest on well-established notions of duty, or that seek to expand duty into new areas, determining when a duty will be imposed requires the analysis of multiple factors. Although the foreseeability of an injury is a foundational consideration, it is never the sole determinant of duty. We must always consider societal expectations regarding behavior and individual responsibility in allocating risks and costs, and we consider the hand of history, our ideals of morals and justice, the convenience of administration of the rule, and our social ideas as to where the loss should fall.

2007 ME 108, ¶ 14, 930 A.2d 1016, 1020 (internal quotations and citations omitted).[3]

---

[3] That formulation is reminiscent of Professor Prosser's articulation of the same legal algorithm: "In the decision of whether or not there is a duty, many factors interplay: the hand of history, our ideals of

4

Ultimately, the determination of whether a duty of care exists hinges on "whether the defendant is under any obligation for the benefit of the particular plaintiff." *Trusiani v. Cumberland & York Distribs., Inc.*, 538 A.2d 258, 261 (Me. 1988) (quoting W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 53, at 356 (5th ed. 1984)).

In *Chapman v. Rideout*, the Law Court adopted the formulation of the tort of negligent misrepresentation in section 552(a)(1) of the Restatement (Second) of Torts:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

RESTATEMENT (SECOND) OF TORTS § 552(a)(1), *quoted at* 568 A.2d 829, 830 (Me. 1990).

That formulation implicitly answers the question presented here, because the information that Mr. Anderson supplied was for the guidance of his clients, the Wellings, and not for the guidance of Ms. Maillet. Moreover, the loss claimed by Ms. Maillet was not "caused . . . by [her] justifiable reliance upon that information" within the meaning of section 552, but by the Wellings' reliance on it.

Comment h to section 552 makes the point explicitly:

> *h. Persons for whose guidance the information is supplied.* The rule stated in this Section subjects the negligent supplier of misinformation to *liability only to those persons for whose benefit and guidance it is supplied.* In this particular his liability is somewhat more narrowly restricted than that of the maker of a fraudulent representation, which extends to any person whom the maker of the representation has reason to expect to act in reliance upon it.

> RESTATEMENT (SECOND) OF TORTS § 552, cmt. h (emphasis added); *see also Rand v. Bath Iron Works Corp.*, 2003 ME 122, ¶ 13, 832 A.2d 771, 774 (quoting comment a to section

morals and justice, the convenience of administration of the rule, and our social ideas as to where the loss should fall. In the end the court will decide whether there is a duty on the basis of the mores of the community always keeping in mind the fact that we endeavor to make a rule in each case that will be practical and in keeping with the general understanding of mankind. W. Prosser, *Palsgraf Revisited*, 52 Mich. L. Rev. 1, 15 (1953) (internal quotation marks omitted).

552 for the proposition that "liability for negligent misrepresentation is 'more restricted than that for fraudulent misrepresentation.'")

Section 552 thus limits the scope of the duty of one who provides information to those "others" for whose guidance and benefit the information is supplied. As noted elsewhere in the commentary, the duty is not owed only to those with whom the purveyor of information directly dealt—it can run to certain successors in interest, provided they foreseeably and justifiably rely on the information. Under this theory, for example, title abstractors and surveyors have been held liable to subsequent owners of the property, the title or boundaries of which were analyzed. *See generally* Jay M. Feinman, Professional Liability To Third Parties §§ 5.2-5.4.4, at 46-61(ABA Books 2000).

However, the essential element in those cases that is missing in this case is that the third parties relied on the alleged negligent misinformation. Ms. Maillet did not rely on anything Mr. Anderson said or did. In fact, the opposite is true. She tried to persuade the Wellings not to rely on Mr. Anderson's report. Thus, she is outside the limits of Mr. Anderson's duty of care, even assuming it might extend beyond the Wellings. The court therefore concludes as a matter of law that Mr. Anderson cannot be liable to Ms. Maillet for negligent misrepresentation.

Mr. Anderson is not alleged to have been negligent except with regard to supplying information to the Wellings. This means that, if Mr. Anderson did not owe any duty to Ms. Maillet for purposes of the tort of negligent misrepresentation, the gravamen of which is the negligent furnishing of information, it follows that he owed her no duty for purposes of the broader tort of negligence.

The conclusion that Mr. Anderson owed no common law duty of care to Ms. Maillet comports with logic and common sense, as well as with the societal expectations mentioned in

6

the *Alexander* decision. Those in the business or profession of giving advice—lawyers, accountants and septic inspectors, for example—regularly furnish their clients with information of a due diligence nature that is adverse to other parties. It is therefore often foreseeable that a client's reliance on that advice will cause a loss to the other party, as when the client cancels the transaction.

However, as noted in *Alexander v. Mitchell,* foreseeability is not the "sole determinant" of the existence of a duty. To impose a duty of due care on such an advisor for the benefit of the other party in a transaction would run contrary to the advisor's duty of loyalty to the advisor's own client. To impose a duty on such an advisor to use due care in protecting the interests of adverse parties would create irreconcilable conflicts in loyalty. The legal conclusion that a septic system inspector retained by a prospective buyer of real estate owes no duty of care to the seller is therefore consonant with the realities of the contractual relationships and expectations involved, and thus with the "mores of the community," to quote Professor Prosser. *See* footnote 2, *supra.*

### Conclusion

Because there was no contractual relationship between the parties, and because the Defendant-Appellant owed no duty of due care to the Plaintiff-Appellee, she cannot recover against him as a matter of law under either of the legal theories upon which she relies. The District Court's entry of judgment in her favor was therefore based on an error of law. It is hereby ORDERED AND ADJUDGED as follows:

1.   The appeal is sustained. The judgment in *Maillet v. Anderson,* West Bath Dist. Ct., Docket No. WESDC-SC-10-0428 dated December 9, 2010 is hereby vacated.

2.   This case is hereby remanded to the West Bath District Court for entry of judgment in favor of the Defendant-Appellant, who is also awarded his costs as the prevailing party.

7

Pursuant to M.R. Civ. P. 79(a), the clerk is hereby directed to incorporate this Decision

and Judgment in the docket by reference.

Dated June 2, 2011

A. M. Horton
Justice, Superior Court