STATE OF MAINE

AROOSTOOK, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. HOUSC-CV-15-18

CHARLES L. GRIFFITH              )
                                 )
        PLAINTIFF                )
vs.                              )        ORDER AND DECISION
                                 )
                                 )
                                 )
HOULTON BAND of MALISEET         )
TRIBAL HOUSING AUTHORITY         )
        DEFENDANT                )

Plaintiff was injured on January 17, 2013 when he slipped and fell to the ground in his driveway

at 5 Eagle Drive in Houlton. 5 Eagle Drive is a single unit dwelling and part of a complex of

dwellings owned and managed by the Defendant, Houlton Band of Maliseet Tribal Housing

Authority (hereafter Housing Authority). Plaintiff and his wife were residents of 5 Eagle Drive

pursuant to a lease agreement with the Housing Authority. On August 5, 2015 Plaintiff filed with

the Court a Complaint alleging the Housing Authority was negligent in its treatment of snow and

ice on the driveway. Trial was held February 12, 2018.


## FACTS

By all accounts January 17, 2013 was a typical cloudy but mild winter day. There had not been

any recent significant snow or ice events.[1] At around 1:30pm that afternoon Plaintiff was leaving

---

[1] Weather records show light amounts of snow from mid-afternoon on January 16th into the early
morning of the January 17, and temperatures holding at 30 degrees Fahrenheit most of the 17th

1

his home to go have coffee with his friend, Fred Tomah. Upon Tomah's arrival, Plaintiff left his home and descended the 2 to 3 steps to the driveway, and began walking to the passenger side of the Tomah vehicle. The Tomah vehicle was parked about a car length from the doorsteps. The Plaintiff did not observe any slippery conditions and testified the driveway conditions looked normal but did observe and encounter a small accumulation upwards of an inch of new snow on the driveway. When the Plaintiff got to the passenger side of Tomah's vehicle he slipped on ice under the snow, landing on his left side and injuring his ankle, hip and back.

The Plaintiff had not been outside of his home earlier that day nor the day before. Plaintiff's wife Pam had left the home earlier that day but had not relayed any warnings about the condition of the driveway. Plaintiff indicated that when he descended the stairs from his home he found them to be in good condition. Similarly, he did not observe any icy conditions as he walked across his driveway and did not have any difficulty until the moment he slipped. Fred Tomah however testified that upon his arrival and pulling into the driveway at 5 Eagle Drive he noticed on the driveway the sheen of ice covered by snow. But Tomah did not warn the Plaintiff of his observations.

After falling and getting himself back up, the Plaintiff began to feel pain, but was able to continue to go out for coffee. Upon his return home he had to take pain reliever for the increasing pain. The pain persisted so the following day Plaintiff went to the Emergency Room at Houlton Regional Hospital with primary complaint involving his left ankle. That same

---

but rising briefly just above 32 degrees late morning before returning below freezing around noon and then further descending.

morning Plaintiff's wife Pat telephoned the office of the Housing Authority advising the secretary, Myrna Ford, that someone had fallen on ice on their driveway and requesting they apply sand. Pat did not relay who had fallen or indicate whether there were injuries. Upon receiving the call, Myrna relayed the information to Roger Flewelling who worked in the maintenance department. Roger immediately responded to 5 Eagle Drive but did not observe any icy or slippery conditions, but none the less applied sand near the steps and the portion of the driveway where vehicles parked.

In the weeks that followed Plaintiff continued to experience pain and limitations so he followed up with his family care provider, Dr. Martha Stewart. Dr. Stewart referred him to physical therapy and prescribed ibuprofen and Ultram for his continued back and hip pain. Plaintiff attended PT several times in March and experienced some improvement. He discontinued PT after March 2013. But several months later Plaintiff still continued to suffer from chronic pain, prompting him to return to Dr. Stewart. Dr. Stewart referred the Plaintiff back to PT which he attended several times from June through August of 2014. In her office note dated August 26, 2014 Dr. Stewart indicated the Plaintiff's chronic left hip and low back pain had resolved but advised the Plaintiff to continue with home exercises. Plaintiff testified his pain actually persisted much longer, that he still has some left sided pain and that there are many activities he can no longer perform. Plaintiff's bills for medical treatment total just over $6100, and he incurred additional expenses for prescriptions and mileage.

3

## DISCUSSION

A case for negligence requires a plaintiff to prove by a preponderance of the evidence the following four elements: (1) a duty of care owed to the plaintiff; (2) a breach of that duty; (3) an injury; and (4) causation, that is a finding that the breach of the duty of care was a cause of the injury. Douglas G.Alexander, *Maine Jury Instruction Manual,* §7-11, 7-61 (2016 ed).

As previously discussed in the Court's Order on Defendant's Motion for Summary Judgment dated January 25, 2017 the existence of a duty and the scope of that duty are questions of law. *Alexander v. Mitchell,* 2007 ME 108, ¶14. "What" a duty is involves the question whether the defendant is under an obligation for the benefit of the particular plaintiff. Id., ¶15. If so, the duty is always the same-to conform to the legal standard of reasonable conduct in light of the apparent risk. Id. An owner or occupier of land is under the legal obligation to use ordinary care to ensure that the premises are reasonably safe to invitees in light of the totality of the existing circumstances. *Isaacson v. Husson College,* 297 A.2d 98, 103 (Me. 1972).

In this case the Court previously ruled that the Housing Authority owes the Plaintiff a duty of care. Regardless of the content of the lease agreement, based on the testimony of the witnesses including various representatives of the Housing Authority it is clear the Housing Authority undertook the responsibility of plowing and sanding driveways and walkways of elder tenants, including the Plaintiff. Undertaking that responsibility, the duty is to use reasonable care to ensure the premises are reasonably safe in light of the totality of the circumstances. *Id.* But it is important to note that that duty does not include *ensuring* the safety of invitees. *Id.*

4

In the *Maine Jury Instruction Manual*, Justice Alexander has characterized Maine law as follows:

The owner of a building has a duty to use reasonable care to maintain the premises in a reasonably safe condition. To recover in this case the plaintiff must prove by a preponderance of the evidence that:

1. There was an accumulation of snow and/or ice on the premises that was a proximate cause for his injuries;

2. The snow and/or ice condition had been present for a time of sufficient duration prior to plaintiff's injury to enable a reasonably prudent person to discover and remedy( or warn of) it; and

3. The defendant knew of the snow and/or ice condition and did not correct (or warn of) it, or did not know of the snow and/or ice condition but in the exercise of reasonable care should have known of and corrected (or warned of) the condition. Douglas G.Alexander, *Maine Jury Instruction Manual*, §7-64 (2016 ed).

As for this case, the Housing Authority contracted with the Houlton Band of Maliseet Indians (HBMI) to plow and sand the various streets through the Housing Authority and to also sand the driveways. The Housing Authority's own maintenance crew plowed the driveways and tended to the steps and walkways servicing the units. From the testimonial evidence, although the respective crews of the Housing Authority and HBMI are separate and distinct, they work cooperatively with one another with respect to sequence and timing of their respective tasks. Their practice is to plow or remove snow upon accumulation of 3 inches of snow, and to

5

otherwise plow or sand/salt upon any weather event that warrants treatment such as freezing rain, or a thaw with re-freezing. In addition, all tenants are provided a newsletter with contact numbers to call in the event they need their driveway or walkways treated, upon which the Housing Authority will dispatch a maintenance worker. Finally, per the testimony of the maintenance workers it is also their practice to regularly surveil the roads, driveways and walkways and spot treat as needed, although none of them have a memory of doing so on January 16 or 17, 2013.

So, the question becomes whether the Plaintiff has met his burden to prove by a preponderance of the evidence that the Housing Authority breached the duty of care it owed. As discussed *infra* the Housing Authority has a reasonable practice of treating snow and ice or related weather conditions. But more specifically to January 17, 2013, there is insufficient evidence of a weather event that would objectively warrant deploying of the maintenance crew. There had not been a snow or ice event. Plaintiff references the weather records (Defendant's Exhibit 1) to support his proposition that there had been a snow and thaw event. But the Court does not share in that analysis. As previously indicated in Footnote 1, the records show there had been some light snow and mild temperatures on January 17, hovering around 30 degrees and edging above the freezing mark for a brief time. But those records are not indicative of the type of weather event that would necessarily lead to deployment of the plow crew. And even if Plaintiff's assertions are accurate, the brief time that temperatures went above freezing was just prior to when the Plaintiff left his home- that would not leave sufficient time for the Housing Authority to have acquired notice and taken action. On the other hand, Plaintiff himself described the amount of snow on his driveway as only about an inch, which again would not warrant plowing. In total, this evidence is

6

insufficient to establish that a snow or ice condition that warranted treatment existed or had been present for sufficient duration for the Housing Authority to discover or remedy.

For the Plaintiff to prove that the Housing Authority breached its duty of reasonable care to make the premises reasonably safe in light of the totality of the circumstances, Plaintiff must prove by a preponderance of the evidence that the slippery condition existed for sufficient duration for the Housing Authority to discover and remedy it, and that the Housing Authority was on notice of the need or should have known of the need to treat the driveway and walkways on January 17, 2013. As already discussed there is no evidence of a weather event that would trigger notice. Plaintiff's testimony describes an inch of snow on the driveway- well below the threshold trigger of 3 inches. The weather records do not establish an accumulation of snow warranting treatment. There is no evidence of rain or freezing rain. At best, Plaintiff points to weather records to show mild temperatures, above freezing for a brief period. Alone, the weather records do not establish a need to plow or sand. Before he fell, Plaintiff did not observe any conditions that caused him concern- he in fact descended the stairs and walked across the driveway without observing anything and without incident until the moment he slipped. And it could be inferred his wife Pam did not observe any unsafe conditions, as she made no warnings to either the Plaintiff or Housing Authority. The only evidence Plaintiff offered to suggest the driveway appeared slippery was the testimony of Fred Tomah. He testified he could see a "sheen" on the driveway covered with a bit of snow when he arrived. The Court does not question that those were the conditions Mr. Tomah observed, yet Mr. Tomah gave no warning either. In short, what Mr. Tomah described is a typical driveway in Northern Maine in January. And that Mr. Tomah made this observation upon

7

his arrival, moments before the Plaintiff fell, again does not establish the condition existed sufficiently long enough for the Housing Authority to become on notice and take action.

Plaintiff did establish from Housing Authority witnesses that they could not recall making any inspections of Plaintiff's driveway on January 17, 2013. Although it is their practice to surveil driveways as they drive around the community, none of the witnesses have a memory of doing so on the day in question. But even accepting they did not make any drive-by inspections does not make the Housing Authority negligent. Plaintiff must still prove by a preponderance of the evidence that an unreasonably safe conditions existed of sufficient duration for the Housing Authority to become on notice and remedy it. There is no evidence the driveway was unsafe when Plaintiff's wife Pam left earlier in the day. And when Roger Flewelling of the maintenance department went to the property the following day, he did not observe any icy conditions. It is unknown when the condition arose, therefore making it impossible to assess whether the condition had been in existence of sufficient duration for the Housing Authority to be on notice.

Snow covered driveways are the norm during Maine winters. With those conditions there is always the risk that portions will be slippery, and the cause of the slippery condition may not be easily discernible, often covered by light accumulations of snow. And such conditions wax and wane. An area that is not slippery at a given time can become slippery in a brief lapse of time as temperatures change, and vice versa.[2] Notwithstanding that Mr. Tomah detected a "sheen" upon his arrival moments before the injury, the Plaintiff himself did not observe anything in the

---

[2] For example, Pam did not report slippery conditions when she left earlier on the 17th, and Roger Flewelling did not observe any icy conditions when he went to the property on the 18th, when per the weather records temperatures were below freezing.

8

condition of his driveway that caused him concern. Whatever he slipped on was snow covered. The Plaintiff simply did not see any problem. Again, the Housing Authority is not required to ensure the safety of the Plaintiff. Its duty is to use reasonable care.

In conclusion, the Plaintiff has not proven that a condition existed on Plaintiff's driveway of sufficient duration for the Housing Authority to address, and has not proven that the Housing Authority was either on notice of a condition or could have been on notice with the exercise of reasonable care. The Plaintiff has failed to prove that the Housing Authority breached the duty of care it owed.

Accordingly, Judgement is entered for the Defendant, Houlton Band of Maliseet Tribal Housing Authority.

The clerk shall incorporate this Order into the docket by reference pursuant to M.R.Civ.P. 79(a).

Dated: March 5 , 2018

Justice, Superior Court

9

STATE OF MAINE

AROOSTOOK, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. HOUSC-CV-15-18

CHARLES L. GRIFFITH          )
                              )
          PLAINTIFF           )
                              )
vs.                           )          ORDER ON DEFENDANT'S
                              )          MOTION FOR SUMMARY
                              )          JUDGMENT
                              )
HOULTON BAND of MALISEET      )
TRIBAL HOUSING AUTHORITY      )
          DEFENDANT           )

On October 28, 2016 Defendant filed a motion for summary judgment. For the reasons set forth below, Defendant's motion is denied.

Plaintiff was injured on January 18, 2013 when he slipped on ice and fell to the ground in his driveway at 5 Eagle Drive in Houlton. 5 Eagle Drive is a single unit dwelling and part of a complex of dwellings owned and managed by the Defendant, Maliseet Indian Housing Authority. Plaintiff and his wife were residents of 5 Eagle Drive pursuant to a lease agreement.[1] The essence of Defendant's motion is no duty is owed to the Plaintiff regarding removal of snow or ice from the driveway.

Summary judgment is appropriate when there are no genuine issues of material fact, and the facts entitle a party to judgment as a matter of law. M.R. Civ. P. 56 (c); In Re Estate of Davis, 2001 ME 106, ¶7, 775 A.2d 1127, 1129. The Court should grant a defendant's motion for summary judgment if the evidence favoring the plaintiff is insufficient to support a verdict for the plaintiff as a matter of law. Curtis v. Porter, 2001 ME 158, ¶7, 784 A.2d 18,21. A fact is material when it has the potential to affect the outcome of the suit. Kenny v. Dep't of Human Services, 1999 ME 158, ¶3, 740 A.2d 560, 562. An issue is genuine if sufficient evidence supporting the claimed factual dispute exists to require a choice between the parties' differing versions of the truth at trial. Id.

The existence of a duty and the scope of that duty are questions of law. Alexander v. Mitchell, 2007 ME 108, ¶14. "What" a duty is involves the question whether the

---

[1] Only Pamela Griffith was a signatory to the lease agreement, but for purposes of this action the Plaintiff, as husband to Pamela Griffith, is considered a proper resident and tenant of 5 Eagle Drive.

1

defendant is under an obligation for the benefit of the particular plaintiff. Id., ¶15. If so, the duty is always the same-to conform to the legal standard of reasonable conduct in light of the apparent risk. Id. An owner or occupier of land is under the legal obligation to use ordinary care to ensure that the premises are reasonably safe to invitees in light of the totality of the existing circumstances. Isaacson v. Husson College, 297 A.2d 98, 103 (Me. 1972).

The case at hand involves a single family dwelling pursuant to a lease. The lease contains a number of provisions which purportedly delegate responsibilities. Relevant sections include:

> 8. TENANTS OBLIGATIONS AND RULES
> H.Tenant agrees to maintain grounds and landscaping adjacent to his/her dwelling unit. In the event TENANT fails or neglects to maintain grounds as assigned, TENANT shall pay to MANAGEMENT any and all expenses incurred by MANAGEMENT in the maintenance and repair of said grounds rendered necessary by such failure....

> 9. MANAGEMENT OBLIGATIONS
> The MANAGEMENT shall
> A. Maintain the premises and complex in a decent, safe and sanitary condition.

> 10. MAINTENANCE REPAIR
> Tenant shall use reasonable care to keep the dwelling unit clean and in such condition so as to prevent health or sanitation problems from developing. TENANT shall notify MANAGEMENT promptly of known needs for repairs to his/her dwelling unit, and of unsafe conditions in common areas and grounds of the project that may lead to damage and/or injury. See Lease § 8,9 and 10.

The lease does not specifically address snow and ice removal from the dwelling driveways. Defendant asserts the provisions set forth above render the tenants responsible. But the Court does not agree that the lease delegates responsibility of snow and ice removal to the tenants.

The Defendant had entered a contract with Houlton Band of Maliseet Indians (HBMI) to plow and sand all of the streets and driveways. The Defendant paid for these plowing and sanding services, which were delivered to the Plaintiff and other tenants. DSMF ¶8,9; Exhibit A (Contract). In addition, the Defendant directs HBMI to plow and/or sand the driveways in the Village when and if there is (a) three (3) or more inches of snowfall; (b) freezing rain resulting in ice accumulations; and (c) obvious freeze and thaw events that result in ice accumulation. DSMF ¶ 10. Also, as a courtesy to elderly tenants, the Defendant will provide snow removal and sanding of stairways and walkways when there is one of the above listed triggering events or when requested by the tenant. DSMF ¶ 11.

2

Defendant asserts that at the time of the Plaintiff's fall there had not been an accumulation of snow or ice, or a triggering event to warrant plowing or sanding. DSMF ¶ 24,25. In support of these allegations Defendant references the deposition of Fred Tomah. Tomah Depo. 39:24-40:1. Plaintiff denied these statements of material facts.

In this case the lease does not relieve the Defendant of a duty of care. The lease does not specify who is to maintain the driveway, either plowing or sanding. Although maintenance of grounds is assigned to the tenant in Paragraph 8H, grounds is distinguishable from snow and ice treatment. And if Defendant were to rely on Paragraph 8H to hold the Plaintiff responsible for maintenance of the driveway in the form of removal of accumulations of snow or ice, it did not follow its own lease. Defendant undertook the role of plowing and sanding the roads of the complex and individual driveways, with no additional charge to the Plaintiff or other tenants. This is inconsistent with the additional terms of Paragraph 8H which require Tenant to pay Management all expenses for maintenance. In short, an attempt to hold the Tenant responsible for treatment or maintenance of the driveway for accumulation of snow or ice via interpretation of the lease leads to an ambiguous result.

The Court therefore finds that the Defendant does owe a duty of care to the Plaintiff regarding the removal of ice and snow from the driveway. That duty is to conform to the legal standard of reasonable conduct in the light of the apparent risk. Alexander, ¶15. The Defendant has set forth a cogent argument that its practice of plowing and/or sanding upon a triggering event of 3" or more of snow, freezing rain resulting in accumulation, obvious free and thaw events, or when requested by the Tenant is a reasonable practice that relieves it of liability. Although the practice may indeed be reasonable, it is still a factual issue best left to the factfinder whether it is a reasonable practice to satisfy the duty it owes to the Plaintiff.

In addition, a factual question remains regarding the conditions in general. Defendant relies on the deposition of Fred Tomah for the proposition that there was not an accumulation of snow warranting plowing. Tomah Depo. 39:24-40:1 But reviewing that portion of the Tomah deposition in its entirety, Mr. Tomah stated "…it wasn't plowed because there was really no snow that would warrant such a plowing, **but certainly there would have been for sanding.**" Tomah Depo. 39:25- 40:2, emphasis added. It may be a factfinder determines that the practice followed by the Defendant was reasonable and sufficient to meet the duty owed to its Tenant, the Plaintiff in light of the apparent risk. But that none the less remains a question for the factfinder to answer.

Accordingly, Defendant's Motion for Summary Judgment is denied.
The clerk shall incorporate this Order into the docket by reference pursuant to M.R.Civ.P. 79(a).

January 25, 2017

_____
Justice, Superior Court

3

| Attorney | Party | Representation Type | Representation Date |
|---|---|---|---|
| ☑ ✉ Olfene, Amy | **Houlton Band Maliseet Tribal Housing Auth – 2 Defendant** | Retained | 01/19/2016 |
| ☑ ✉ Smith, Kaighn | Houlton Band Maliseet Tribal Housing Auth – 2 Defendant | Retained | 08/28/2015 |
| ☑ ✉ Mccue, Carl | Charles L Griffith – 1 Plaintiff | Retained | 08/05/2015 |
| ☑ ✉ Van Dyke, David | Charles L Griffith – 1 Plaintiff | Retained | 08/05/2015 |